Chief Justice Robertson
delivered the Opinion of the Court.
Hicham) Barbor, ‘who died without children, many years ago, devised to his sister, Mrs. Johnson, and to three of his brothers, towit, Thomas Barbor, James Barbor, an¿[ Ambrose Barbor, a tract of land on the Ohio river, near •the mouth of Salt River, in this state, of which he was the patentee, and which was described as containing eight hundred acres,
Afterwards, towit, in 1810, Ambrose Barbor sold and conveyed to Thomas Carneal, all the interest which he, as one of the devisees of Richard Barbor, claimed in the tract thus devised to himself and others.
On the 13th of November, 1815, James Young bought the interest of the devisee James Barbor in the said tract of land, at a sheriff’s sale, under an execution on a decree which Thomas Barbor, one of the heirs of the said James, who was then dead, had obtained against his co-heirs; and the sheriff afterwards conveyed to Young, the legal title of James Barbor’s heirs to one undivided fourth part of the tract of eight hundred acres.
On the 22d of December, 1815, Thomas Barbor, the son of the devisee James, for the consideration of eighteen hundred dollars, sold, and covenanted to convey, ■to Young, by a designated boundary, five hundred and ninety seven and a half acres of the tract of eight hundred acres; surrendered Young’s bond for about six hundred dollars, -which was the amount bid at the sheriff’s .sale; agreed that Young should have a deed from the sheriff for the undivided fourth part of the eight hundred acres which he had bought under execution, and undertook to prosecute, at Young’s cost, any suit or suits that might be necessary for securing the title to the *307 five hundred and ninety seven and a half acres, and for recovering the possession thereof from Jeremiah Pate, who then held it adversely to the- claim of Richard Barbor’s devisees.
Accordingly, in January, 1816, an action of ejectment was brought against Pate, on several demises, in the names of Richard Barbor’s devisees and the heirs of such of them as had died, and in the names of Carneal and others.
In September, 1817, Pate confessed judgment.
In March, 1820, upon proof that Pate had held under an adverse title, commissioners were appointed to assess the value of improvements, &c. pursuant to the occupant law.
In June, 1821, the commissioners having made their report, and the lessors 'not appearing to make an election, the court rendered a judgment in favor of Pate, for twelve hundred and sixteen dollars and ninety five cents, the amount reported for improvements, after deducting, for waste and for rents.
To reverse that judgment, an appeal was taken, and a bond for prosecuting the appeal was given by Thomas Barbor and James Young.
In November, 1825, the appeal was dismissed, with ten per cent, damages, for want of prosecution; and the mandate of the Court of Appeals was filed in the Circuit Court, by Pate, in March, 1828.
Pate, having, in May, 1828,. sued Young alone on the appeal bond, recovered a judgment against him, in June, 1828, for eighteen hundred and sixty five dollars — to reverse which, Young sued out a writ of error,, with a supersedeas^ July following; and on the 29th of December, 1829, the judgment was affirmed by this Court, with costs and damages.
In April, 1830, Young filed a bill in Chancery against Pate, alleging that he was. insolvent, and praying for an injunction, and for a set-off for rents and waste since, the assessment by the commissioners.
Afterwards, an amended bill was filed, against the heirs of the devisees of Richard Barbor, and against Thomas D. Carneal and James D. Breckinridge and *308 others — alleging that Thomas Barbor had authority from them, or from those under whom they claimed, to make the sale to Young, of the five hundred and ninety seven and a half acres, and praying for a decree for a conveyance, or for contribution, or for a surrender of the land to Pate, and for any other relief which might be just and proper.
Such of the defendants as answered the amended bill, denied that Thomas Barbor had any authority to sell the land, or to prosecute the action of ejectment; insisted that Young’s contract was champertous, and resisted any decree for relief in any shape, or to any extent.
On the hearing of the cause, the Circuit Court dissolved the injunction, with damages, and dismissed the bill, with costs; and this appeal is prosecuted to reverse that decree.
It must be admitted, at the threshold, that, if the decree of the Court below be right, the appellant’s case is-an unique in equitable jurisprudence; for the moral sense of all mankind must feel the injustice of permitting Pate to recover the value of his improvements, and still also- hold the land, or elude the judgment in ejectment; or of allowing Barbor’s devisees or their heirs and alienees to get the possession of the land, in virtue of that judgment, or to derive any benefit from it, unless they will acknowledge it as their own in every respect, and will contribute to the price which it cost. It cannot be just that Young should be compelled to pay for the improvements, and not be entitled to some correspondent interest in the land, or to some equivalent retribution, or to any kind of indemnity whatever. Those who will be benefitted by the payment for the improvements-, must either not be equitably entitled to that benefit, or must be bound m conscience to give something . . b & lor it;- and, of course* if Young be compelled to pay ^® for the improvements, he is- entitled, in equity, either to the land or- to some indemnity from some quarter or’ otherwise, equity is not justice, or a Court of Equity has not power to do equity.
*309 Young has not forfeited the amount of his bond for improvements, by any act either illegal, champertous or immoral. His contract for the purchase of land in the adverse possession of another, was not illegal. There was no law in force at the date of that agreement, prohibiting such a sale — nor is there any sufficient reason for believing that Young, in making the contract, was influenced by any motive inconsistent with fair dealing, or with public policy, or pure morality. Having, by a fair purchase under execution, acquired an interest in the title of Barbor’s devisees, he had a perfect right to prosecute a suit for trying their title, or for obtaining the possession, and an unquestionable right to buy their entire interest. The time for bringing suit was perhaps about to expire. The title which he contracted for, has been since acknowledged to be the best. Pate cannot complain, because he insists on his judgment for improvements, in preference to a retention of the land. The heirs and alienees of Barbor’s devisees have no cause for complaint, because, had not the suit been brought as it was and when it was brought, there is reason to presume, that their right would have been irrecoverably lost; and, so far as they are concerned, they should either renounce all benefit from the judgment, or take it cum onere. But they have manifested no disposition to abandon the judgment; and, even were they willing to surrender it, with their disavowal of authority to prosecute the suit which produced it, Pate is not willing that all parties should remain as if there had been no suit. He clings to his judgment for improvements, though he insists that the judgment of eviction was obtained without authority.
Now it seems clear to us, that Young is entitled to relief. The specific relief which he should have, may be matter of some doubt. But we are of the opinion that, though he has some equity against Pate, as well as *310 against the claimants of the land, he is not entitled to a perpetuation of his injunction to the entire judgment against him. -However erroneous the judgment for improvements may have been, it is not void: and this court cannot now revise, or set it aside. Pate cannot now be compelled to take the land in lieu of his judgment; nor do we feel altogether authorized to take from him the full benefit of that judgment, merely because he denies that Young had any authority to prosecute the action of ejectment; for the judgment of eviction must nevertheless stand, and may be enforced, unless all parties consent to waive it; and we are moreover of the opinion, as already suggested, that Young’s interest gave him sufficient authority to prosecute the suit in the names of the lessors.
Nor is Pate responsible for the alleged waste, because no such waste has been proved; nor for all the rent claimed for his occupancy of the land since the judgment of eviction; because his liability for rent after judgment, is limited by positive law, to five years, unless he had, himself, occasioned longer delay. 2 Stat. Law, 1232, and Cole vs. Damron, 7 J. J. Mar. 597. But the same law, as authoritatively expounded, renders him liable for five years rent after judgment of eviction. Webb vs. Galloway's Heirs, 2 Marshall, 483, and Nowells vs. Smith. 3 Lit. 470.
The commissioners assessed the rents which had accrued prior to the date of their report; but as five years had not then elapsed from the date of the judgment, Pate is liable for rent for the residue of that term. And Young — holding an interest in the land, and having a right to prosecute the suit, and being now solely bound for the whole assessed value of the improvements — is, in our judgment, equitably entitled to a set-off for what remains due for rent; and to this extent, at least, relief should have been granted to him against Pate.
He might also be entitled to other1 relief against Pate, in a possible and not improbable contingency: the de *311 mise will expire on the first of December next; then the Chancellor, having enjoined the judgment for the value of the improvements, and having the parties thus before him, might refuse to dissolve the injunction, unless Pate would consent, either to an extension of the demise, or to a surrender of the possession to Young: for if Pate should hold the land, he should not be permitted to coerce the price assessed for improvements which he had made on it, and which he alone would, in that event., himself enjoy.
But Young is entitled in equity to other and greater relief against the appellees who claim an interest in the land and in the judgment of eviction. Being associated with them in interest to the extent of one fourth part of the tract recovered, he is equitably liable for Only one fourth of the assessed value of the improvements. As he had a right to prosecute the suit, and they were rightfully made parties to it, they cannot resist contribution by denying the validity or reasonableness of the assessment; and the legal presumption is, that, had they personally attended to the valuation, it would have been just what it is; because we are hound to pre- . . : . r sume that it is not too high, hut is only what was just and right. The judgment for improvements was, in fact, against them, and not against him, — and he became •consequentially hound by signing, as their surety, an appeal bond. As then the judgment is not impeached for fraud, or any other good objection, he has a right to call on them in equity for contribution. He cannot enjoin Pate’s judgment against himself until they contribute, nor compel Pate to look to them for any part of the judgment. But he has a right to call on them to contribute, or to indemnify him. And therefore, if they fail to contribute their just proportions, he would have a right to a hen on the land, and a right, of course, to the exclusive use and 07 7 *312 possession of it until they make proper retribution^-* each to the extent of his interest in the land: — and Pate should, for that end, be compelled to surrender the possession to him.
But he would only be entitled to three fourths of the judgment for improvements and the legal interest thereon, after deducting three fourths of the amount of his set-off for rents. As the appeal was dismissed in consequence of his own negligence, he is entitled to nothing for the costs and damages incidental to the appeal. Nor is he entitled to any thing for costs and damages on his own writ of error, prosecuted to reverse the judgment against himself, on the appeal bond.
We have said that Young seems to have an interest in the land to the extent of one undivided fourth part. This may need some explanation. James Barbor’s interest, which was conveyed to Young by the sheriff, was a fourth. The consideration of that sale was due to Thomas Barbor, who released it, in consequence of the contract for five hundred and ninety seven and a half acres, by metes and bounds; but still, by that agreement, Young was to have a conveyance from the sheriff, for James Barbor’s undivided fourth of the eight hundred acres, or the entire tract. In addition to that fourth of the original tract, he was to have Thomas Barbor’s conveyance for five hundred and ninety seven and a half acres, including, of course, all the undivided fourth of James Barbor, excepting a fourth part of two hundred and two and a half acres, or the residue of the entire tract after deducting five hundred and ninety seven and a half acres. Young obtained a conveyance from the heirs of T. Barbor, the son of the devisee James, for the five hundred and ninety seven and a half acres; but, as their ancestor’s entire interest had been before conveyed by the sheriff to Young, and as there is no proof that he had any authority to sell more, Young can only be enw titled to James Barbor’s undivided fourth of the whole tract of eight hundred acres, and seems to be entitled to that much.
We have thus considered the case for the purpose of showing that, as it stood in the Circuit Court, the absolute *313 dismission of the bill and dissolution of the injunction was erroneous.
A decree, however, cannot be now made, ending the cause in this Court, nor peremptorily prescribing to the Circuit Court a final decree on the return of the case to that Court. The case is not properly prepared for such decree.
So far as Pate is concerned, or may be affected, he is the only necessary defendant. But as to the interests of others, there is a defect of parties.
CarneaPs heirs are necessary parties, and there is neither proof nor suggestion, that any of the many persons who were made defendants in the Circuit Court, were the heirs of Carneal — the alienee of Ambrose Barbor; and this Court cannot, of course, know judicially that Thomas D. Carneal and James D. Breckinridge sustain that relation, and are the only persons who do.
The heirs of Lucy Newman, and of Sally Gray, and of Nelly Nall, who were heirs of Thomas Barbor, the devisee of Richard, do not appear to have been made parties. The reeord does not show, that the order of publication against them was ever executed; no order is annexed to the certificate of the printer, or identified by it; and there was, as to these persons, no appearance.
As it appears, prima facie, that all the interest of James Barbor’s heirs was fairly and effectually conveyed to Young, they are not indispensable parties, and therefore no defect of preparation as to any of them will be noticed.
If there should be an election to extend the demise, the extension should, of course, be made in the Court in which the judgment in ejectment was obtained; and if the reshould be a relinquishment of right in the judgment, and the land to Young, it should be made by the persons who, at the time of the relinquishment, hold the legal title derived from the patentee.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, for such further proceedings and decree as, according to this opinion, shall be proper.