## C. C. COBB ET AL. V. GEO. P. ROBERTSON ET AL.

### No. 1419.   Decided May 1—June 15, 1905.

**1.—Limitation—Five Years Statute—Registered Deed.**

In order to maintain limitation by possession, etc., of land for five years under duly registered deed, record of the conveyance to the vendors of those in possession is not sufficient; their possession under claim of title in themselves must be with registration of the deed under which they hold it.   (Pp. 139, 140, 143.)

**2.—Limitation—Ten Years—Possession by Tenant—Disclaimer of Title by Landlord.**

Land held by a tenant was mortgaged by the landlord and afterwards conveyed by him to the mortgagee; a dispute arising between grantor and grantee as to whether such deed was an absolute conveyance of title was settled by suit determining that it was.and that the debt was satisfied thereby. During this controversy the tenant remained in possession, grantor and grantee each claiming that the other, and not himself, was the owner.   In a subsequent suit of trespass to try title against such vendee he relied on possession by the tenant during this period to support his plea of the ten years statute of limitation.   Held that such disclaimer of the relation of landlord by him during the former controversy did not interrupt the running of litigation in his favor by possession through the tenant, whose possession was, in law, that of the one held to own the title over his protest.   (Pp. 143–145.)

**3.—Limitation—Possession by Subtenant.**

If a tenant enter under the title of another and hold by permission or sufferance he is estopped to deny such title and the possession, while permitted to last, is that of the owner.   Where a tenant assigned his lease without consent of the landlord, but the assignee was allowed to retain possession, paying rent to the lessee who paid to his landlord, the possession by such assignee was that of the owner and available to him for the purpose of limitation.   (P. 145.)

**4.—Landlord—Attornment by Tenant.**

Attornment by the tenant to a stranger without the landlord's consent and not pursuant to the judgment of a court is void and will not constitute a disseisin of the landlord, unless he elect to so consider it, nor interrupt the running of limitation in his favor by reason of his tenant's possession.   (Pp. 145, 146.)

**5.—Possession—Entry—Disseisin.**

The entry of an adverse claimant upon land and his erection of fencing thereon by consent of the tenant, who still continued in actual possession, was not a surrender of the possession and did not operate as a disseisin of the landlord nor interrupt the running of limitation in his favor.   (Pp. 146, 147.)

**6.—Adverse Possession—Entry.**

The continuous peaceable possession of land required to support limitation is not interrupted by entry of the adverse claimant as at common law; under the statute such interruption, without eviction, must be by suit.   (P. 147.)

**7.—Limitation—Suit by Cotenant.**

An action by one of several owners in common, not brought for the benefit of his cotenants also, did not interrupt the running of limitation against them.   (P. 147.)

**8.—Possession—Judgment—Lease.**

Those who had acquired the title of heirs who had inherited land sued and recovered judgment for title and possession from tenants holding under lease

from the husbands of two such heirs, and later themselves leased the land to same tenants. Held, that the judgment itself did not effect such change of possession as would make the holding by the tenants available to the plaintiffs in judgment for purposes of limitation between the date of the judgment and that of the new lease, nor did that question depend entirely on the existence of a lease contract between such parties; any arrangement or understanding by which the occupants held, in the meantime, for the plaintiffs in the judgment would be sufficient. (P. 147.)

**9.—Warranty—Action—Severance.**

Defendants sued for land had a right by the statute to make their warrantor a party and it was error to grant a severance between the action against the warrantor and the main suit. (Pp. 147, 148.)

ON MOTION FOR REHEARING.

**10.—Practice in Supreme Court—Partial Reversal—Mandate.**

Where only a part or branch of a judgment is brought before the Supreme Court for review on writ of error, and is there reversed and judgment rendered, mandate of that court should issue, upon its judgment, to the trial court, leaving the Court of Civil Appeal to enforce by its mandate the portion of its judgment not affected by the writ of error. (Pp. 148, 149.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Bosque County.

Robertson and others sued Cobb and others in trespass to try title, and obtained judgment. Defendants appealed and the judgment was affirmed in part and in part reversed and remanded. From the affirmed judgment appellants prosecuted writ of error. The case on appeal is styled M. Logan, et al., v. Geo. P. Robertson, et al.

The opinion of the Court of Civil Appeals so far as relates to the defense of the Statute of Limitation of five years, referred to and approved in the present opinion was as follows:

CONNER, CHIEF JUSTICE.—To the extent at least of half of the north half of the survey the five years statute of limitation, by the terms of the statute, is not available to the adverse claimants of the north half of the DeMoss survey. For to this extent at least, in the absence of said statute, they must deraign their title through the forged deed of Peter DeMoss. See Rev. Stats., art. 3342. And if we assume that the other half of the north half first conveyed by the deed from J. M. Cayce to Jenkins and Robertson is unaffected by the forgery of the Peter DeMoss deed, we still think appellants failed to establish title to any part of the survey under the five years statute. As before stated, the first adverse possession under this claim began on May 24, 1888, when Robertson made his written lease to Willard and SoRelle. This possession on the part of Robertson did not extend beyond April 22, 1893, when he conveyed to Cobb, a period of four years, ten months and twenty-eight days, for thereafter he disclaimed all right of title and possession. It is insisted that as a matter of law the possession of Willard and SoRelle from January, 1888, when Jenkins and Robertson procured judgment against them, until May 24, 1888, when Robertson

leased to them, was the possession of Jenkins and Robertson, the case of Root v. Woolworth, 150 U. S., 401, being cited in support of this contention. While such may be the ordinary presumption we do not think it conclusive. The question is at last one of fact upon which appellants failed to request a finding by the jury which is doubtless a sufficient answer to the contention here made. Rev. Stats., art. 1331. In addition to which the facts in the case before us tend to show, as we think, that the contrary was true. During the period named Willard and SoRelle were in possession under an unexpired written lease from Dr. Lunn and Joiner, and as in effect shown by the verdict of the jury, claimed no right by virtue of any verbal agreement with Jenkins and Robertson covering this period. During said period we find that there were some negotiations between SoRelle and Robertson looking to a sale or lease of the Jenkins and Robertson interest, but as late as April 24, 1888, Jenkins and Robertson write to W. A. SoRelle stating, "We have waited on you now as long as we can and unless you come up and close the matter up by Monday next we will not let you have the land. Now in the event you do not come by that time will you give us possession of the land? If not we will have to send the sheriff down and get possession. This delay has vexed and annoyed us no little, and we are determined to close it up by sale or getting possession of the land. Let us hear from you at once," and J. M. Robertson testified: "At the time I wrote the above letter I did not have possession of the land." There were also other letters and evidence of like tendency, so that we think it clear that title under the five years statute of limitation had not been acquired at the date of J. M. Robertson's conveyance to the appellants Cobb and the Canadian and American Mortgage & Trust Company. And if it be conceded that the possession of Willard and SoRelle and of Logan thereafter was the possession of the appellants last named it can not avail them under the five years statute because of the fact that the deed to them was never recorded. In such case appellants can not avail themselves of the benefit of the record and possession of their vendors. It was necessary that possession by them be held and maintained by virtue of the record of the particular deed under which they claim. See Cook v. Dennis, 61 Texas, 248; Porter v. Chronister, 58 Texas, 56; Brownson v. Scanlan, 59 Texas, 228; Medlin v. Wilkins, 60 Texas, 418; Van Sickle v. Catlett, 75 Texas, 409; Sorley v. Matlock, 79 Texas, 304.

*Wm. M. Knight* and *Cobb & Avery,* for plaintiffs in error.—The defendant Cobb and The Canadian and American Mortgage & Trust Company, Limited, and those under whom they claimed, were shown by the evidence to have been in the peaceable and adverse possession of the north half of the survey in controversy, cultivating, using and enjoying the same, and paying all taxes thereon, and holding the same under deeds duly registered for five years before the bringing of this suit.

The demands of the statute of limitations of five years requiring that one, to avail himself of its provisions, must claim under a deed or deeds duly registered, are complied with when the claimant has shown a privity in estate and a continuity in possession with the former

owner, who held under a duly recorded deed, and had claimed under a trustee's deed passing the title of such former owner to him, although it was subsequently incidentally adjudicated in a suit between the former owner and the claimant that a deed executed by the former owner to the claimant prior to the execution of the trustee's deed, passed the title to the claimant, in which suit the former owner affirmed and the claimant denied that the deed was accepted by the claimant in full satisfaction of the debt secured by the mortgage lien on the land.

Where one claiming under five years statute of limitations has shown privity in estate and continuity in possession with the former owner, who held through tenants, under duly registered deeds, he is entitled to benefit of the statutes, although he refused to accept a deed executed to him by the former owner.

The defendant Cobb and The Canadian and American Mortgage & Trust Company, and those under whom they claimed, were shown by the uncontroverted evidence to have been in the peaceable and adverse possession of the north half of the survey in controversy, claiming, cultivating, using and enjoying the same for ten years before the 9th day of June, 1898, the date of the filing of the first amended original petition herein, in which between fifty and sixty of the plaintiffs for the first time became plaintiffs and asserted a claim to said land.

Where a suit is pending to recover the title to land, limitations will run against owners or claimants not plaintiffs, until by amendment they become plaintiffs. A suit by one joint owner to recover land does not stop the running of limitations against other joint owners not parties to the suit. Telfener v. Dillard, 7 S. W., 847; Davidson v. Wallingford, 88 Texas, 619; East Line & Red River Ry. Co. v. Culberson, 72 Texas, 375.

Where the interest of one or more tenants in common is barred by limitations, the plaintiff not barred can only recover as to that not barred.

"The court below erred in holding and adjudging that the interests in the north half of the DeMoss survey, of Catherine Phillips, Prince Stagner and J. L. Stagner had passed to and been conveyed to Geo. P. Robertson, and in holding that plaintiffs in this case had acquired and owned the whole of said north half, and in rendering judgment in favor of plaintiffs for the whole of said north half, and in awarding to them a writ of possession for the whole of said north half, and in rendering judgment in favor of plaintiffs for rents of the whole of said north half, because the undisputed evidence showed that the said interests in said north half, of Catherine Phillips, and Prince Stagner, had never been acquired by George P. Robertson or any of the plaintiffs in this case, but had passed to the children of J. L. Stagner, to wit: Charles Stagner, Rube Stagner and Paul Stagner, and plaintiffs failed to prove that George P. Robertson or any of the plaintiffs had acquired the interest of J. L. Stagner in said north half, and his said interest was also in his said children, Charles, Rube and Paul Stagner, and said Charles, Rube and Paul Stagner were not parties to this suit, and their rights and interests are barred by the statutes of limitation of five and ten years, and according to plaintiffs' contention, these three

interests would amount to over 200 acres in said north half." Baldwin v. Goldfrank, 88 Texas, 249.

In a suit of trespass to try title, a defendant or intervenor who is really a defendant, has the right to vouch his warrantor into the suit, and it is erroneous on the part of the court to deprive him of that right. Rev. Stats., art. 5252; Meade v. Jones, 13 Texas Civ. App., 320; McCreary v. Douglas, 24 S. W., 367; 5 Texas Civ. App., 494; Johns v. Harden, 81 Texas, 37.

A severance is only available to one of several defendants who are impleaded by the plaintiff and against whom the plaintiff is seeking some relief. The doctrine of severance has no application to a defendant who has been impleaded by another defendant, and against whom a judgment over is sought by such other defendant. Ballard v. Perry, 28 Texas, 348.

*E. B. Robertson* and *S. H. Lumpkin,* for defendants in error.—The record clearly shows that said appellants (Cobb and the Company Limited) never had actual possession of the said north half except under the lease of Willard and SoRelle from Jenkins & Robertson from May, 1888, to April, 1893—less than five years, and that during that time the north half was not fenced except in connection with other lands.

The question of the possession of the land from the date of the judgment of January, 1888, to May 24, 1888, was one of controverted fact and was resolved by the jury, the trial court and the Court of Civil Appeals in favor of these defendants in error and such finding is overwhelmingly supported by the evidence in the record, and these findings are beyond the lawful power of the Supreme Court to revise. The case of Thomson v. Weisman, recently decided by this court and reported in the 11th Texas Court Reporter, page 136, is directly in point and is decisive of the question against the plaintiffs in error. On May 24, 1888, Willard and SoRelle, who were in possession of the land as tenants under the title now held by the defendants in error, attorned to Jenkins and Robertson and became their tenants. This is the first possession had or claimed by Jenkins and Robertson. On May 18, 1888, Jenkins conveys all his interest to J. M. Robertson. On April 22, 1893, J. M. Robertson conveys the said north half to the plaintiff in error, Cobb. This deed has never been recorded. The period of five years had not elapsed at the time of the transfer of this title to Cobb and the failure to record this deed was fatal to the plea of five years limitations. The deed of the substitute trustee was a nullity and did not pass any right or title. The debt having been paid prior to that time no right to appoint a substitute trustee or make a sale existed. This trustee's deed conveyed nothing and plaintiffs in error acquired no rights thereunder. In order for plaintiffs in error to connect themselves with J. M. Robertson, they must show a privity of title, and this privity of title is not shown by the trustee's deed, but by the deed of April 22, 1893, and this not having been recorded, the five years statute of limitation is wholly eliminated from this case. The adverse possession of the plaintiffs in error did not commence prior to the 24th of May, 1888, and hence in order to complete the ten years period it was necessary to continue until

the 24th of May, 1898. A break in the possession during this time or an interruption of the running of the statute would be fatal to the plea. This adverse .possession must be open and notorious and not secret or clothed with deceptions. After April 22, 1893, J. M. Robertson claimed neither title or possession of the land. Plaintiffs in error seem to admit that from April 22, 1893, to March, 1897, Cobb did not claim the land. Then who claimed it under their title during that period? There must be a claim or else there is no adverse possession.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by defendants in error, some sixty in number, to recover of defendants, including plaintiffs in error, one-third of a league of land granted to John DeMoss. By the claims of title under which defendants held, the tract was practically divided into two parts, called the north and the south halves, the north half alone being claimed by the plaintiffs in error, C. C. Cobb and the Canadian and American Mortgage & Trust Company. A judgment of the district court in favor of the original plaintiffs against these plaintiffs in error for the north half and against the other defendants for a portion of the south half was affirmed by the Court of Civil Appeals, as against plaintiffs in error, but was reversed in favor of the other defendants, and the cause, as to them, was remanded for a new trial. The controversy between the plaintiffs and the defendants, Cobb and the Mortgage Company, as plaintiffs in error, is all that is now before this court. The title asserted by these defendants is held by Cobb in trust for the Mortgage Company, and, for the sake of brevity, will be referred to as his title.

The only question upon which the writ of error was granted relates to the defense of limitation of ten years. We have carefully considered the facts and questions of law upon which the application of the five years statute depends and are of the opinion that that defense, as it was involved in the appeal, was correctly disposed of by the Court of Civil Appeals, and we shall therefore consider as grounds for reversal only the questions arising under the ten years statute between plaintiffs and those defendants now before this court.

The plaintiffs assert the title of the heirs of John DeMoss. The defendants, because of a finding of the jury that a link in their chain of title was a forgery, failed to connect themselves with the original grantee. The evidence showed that in 1885, Lunn and Joiner, the husbands of two of the DeMoss heirs, leased the north half of the survey to Willard and Sorelle, who took and held possession for them until 1888. Jenkins and Robertson, who then claimed the land under the title asserted by defendants, sued Willard and Sorelle in trespass to try title and, on January 26, 1888, recovered judgment against them for title and possession. On the 24th day of May, following, Willard and Sorelle took a lease from Jenkins and Robertson for the land for a year, and, at the end of that time, took another lease from J. M. Robertson, to whom Jenkins had conveyed his interest, for five years longer. There is much controversy in the record as to the status of Willard and Sorelle between the dates of the judgment and of this leasing, but their possession during this interval was found, upon suffi-

cient evidence not to have been that of Jenkins and Robertson and it may therefore, for the present be left out of consideration. On the other hand, there is no contention that Willard and Sorelle were not, after May 24, 1888, lawfully the tenants of Jenkins and Robertson, and afterwards of J. M. Robertson, holding possession for them, the questions raised upon it relating merely to its character, duration and continuity. Some of the facts concerning subsequent transactions are in dispute, but as the cause was submitted to the jury upon special issues, not including any question affecting the defense of ten years limitation, except as to the possession during the short interval referred to, and as no complaint is made in this court of the mode of submission, we must, under the statute, assume in support of the judgment that the trial judge found all facts, to show which any evidence was adduced, in favor of plaintiffs. It results that, in order to reverse the judgment, that part of the evidence which is uncontradicted must sustain the defense of ten years limitation in whole, or in part. Applying this stringent rule we are of the opinion that as against some of the plaintiffs, the defense was legally made out.

In 1892, Willard and Sorelle, being in possession for J. M. Robertson, transferred their interest in the unexpired lease to Logan. To this Robertson refused to assent, but Logan had entered under Willard and Sorelle, and continued in the undisturbed possession and enjoyment of the land, paying the rent to Sorelle, who paid it over to the lessor. J. M. Robertson had executed upon the land in controversy a deed in trust to Cobb, as trustee for the Mortgage Company, to secure a debt due the latter, and on the 22d day of April, 1893, executed to Cobb, in satisfaction of this debt, a conveyance of the land, which deed was received and retained by Cobb. Shortly afterward Logan paid to Sorelle and Sorelle paid to Robertson a year's rent due on the still subsisting lease, and this money was paid over by Robertson to Cobb and was accepted and retained by him. A controversy subsequently arose between Robertson and Cobb as to the effect of the conveyance of April 22, 1893, the former claiming that it was made in discharge of the debt, and the latter claiming that it had not been accepted in payment. The Mortgage Company, by trustee, eventually sold the land and bought it in under the deed in trust, and then, in 1897, sued Robertson for the balance of the debt, but was defeated the same year by the latter upon the ground that the debt had been paid by the conveyance stated. The evidence shows that after that conveyance was made, J. M. Robertson made no further claim to the land but made some efforts to sell it for Cobb under a promise made to the latter. Logan, after the expiration, in 1894, of the lease under which he entered, continued in the possession and enjoyment of the land without further express understanding with Cobb until after the decision in the suit of the Mortgage Company, and then, in 1897, took a lease from Cobb under which he has since held. There is evidence that when the dispute arose between Cobb and J. M. Robertson as to the effect of the deed of 1893, and after the expiration of the Willard and Sorelle lease and before the lease from Cobb to Logan, both Cobb and Robertson disclaimed ownership of the land. J. M. Robertson, whose testimony is as to this uncontradicted, states, in substance, that Cobb represented that his

firm was having trouble with their principal, the Mortgage Company, over the transaction, and, in order to protect himself, endeavored to induce Robertson to sign a document showing that the transaction was not had in payment of the debt. This Robertson declined to do, and the proceedings under the deed in trust and the subsequent suit resulted. It was only in the course of this negotiation that Cobb is shown to have disclaimed ownership. The Court of Civil Appeals seems to have taken the view that this evidence showed an absence of a claim to the land necessary to support the defense of limitation. We do not think it should be so treated. Logan, as we shall presently see, was, at all times, holding possession under the title by virtue of which he entered, and such possession, in law, was that of the owner of that title, whether it belonged to Robertson or Cobb. ·The assertion of each that the other was the owner, and this was the substance of their controversy, was not, we think, an abandonment of all claim to the land and to the possession under that title, but was merely as to the ownership of it. Logan was not holding for himself but for those owning the title through which he received possession. · The facts make it clear that Cobb was such owner after Robertson conveyed to him, and hence he was legally in possession through Logan. If this possession had the other necessary characteristics, it was, itself, a claim sufficient to support the defense.

It is contended that Logan never became the tenant of Robertson and was therefore never the tenant of Cobb, because Robertson never consented to the assignment to Logan of Willard and Sorelle's lease. A contract of leasing or renting is not essential to the holding possession by one for another. If the tenant enter under the title of another and hold by permission, or at sufferance, he is estopped to deny such title and the possession, in law, is that of the owner. The authorities to be cited abundantly show this. The nature of the arrangement by which the possession is taken or held is immaterial to such an inquiry as this. Willard and Sorelle held under lease from Robertson, and, not only they but all who entered under them were subject·to the estoppel and became the tenants of the lessor and his vendees and so continued as long as they were permitted to remain. Whatever may have been the other rights of the landlord and tenants, as between themselves, the possession while it was permitted to last was that of the landlord. Flanagan v. Pearson, 61 Texas, 304; Carter v. LaGrange, 60 Texas, 636; Oury v. Saunders, 77 Texas, 278; Juneman v. Franklin, 67 Texas, 411; Cameron v. Chicago, &c., Ry. Co., 60 Minn., 100; Bedlow v. Floating Dry Dock Co., 112 N. Y., 287; Pulaski Co. v. State, 42 Ark., 118; Forbes v. Caldwell, 39 Kan., 14; Doe v. Reynolds, 27 Ala., 364; Hovenden v. Annesley, 2 Sch. & Lef., 623, et seq. Other authorities to these propositions are cited in 1 Cyc. Law and Proc., 1058, 1062.

It is further contended that the adverse character of the possession of Willard and Sorelle and of Logan was destroyed and its continuity broken by dealings with the plaintiffs in recognition of their title. The evidence shows that there was great uncertainty in the minds of these tenants as to the ownership of the lands and that, at different times

during their holding, they had correspondence and conversations with representatives of plaintiffs indicating a willingness to buy or lease from them, and some of the evidence is to the effect that in 1897 Logan stated to one of plaintiffs that he was holding for them. No contract was ever concluded, and, with an exception to be noticed further on, there is no claim that there was a change of possession. "An attornment by a tenant to a stranger, without consent of the landlord under whom he entered, and not pursuant to or in consequence of the judgment, order or decree of a court, is void, and the holding of the tenant so attorning will be treated as the possession of the person under whom he entered. As said in case of Blue v. Sayre, 2 Dana, 213, such an attornment is utterly void and ineffectual. 'The legal character and effect of the relation of landlord and tenant can not be changed by an illegal attornment, or by mere disclaimer, which can not be deemed as amounting to an actual disseisin, unless the landlord elect to consider it as a disseisin.'" Turner v. Thomas, 13 Bush., 524, and authorities supra.

Had the tenants in this case, without the knowledge or consent of the landlord, actually attorned to plaintiffs, this, under the law, would not have destroyed the landlord's possession, and much less can mere negotiations or disclaimers have that effect. The proposition urged here is that this conduct of the tenants rendered the possession too ambiguous and uncertain to meet the requirements of the statute of limitations. Had this been the conduct of the adverse claimant of the land himself, while holding in person, there would be much force in the contention; but the possession which was lawfully held for a landlord could not be thus impaired by the conduct of the tenants alone. Hurley v. Lockett, 72 Texas, 266.

Another objection urged to the defense is that, in 1897, before the expiration of ten years from the initiation of adverse possession, Logan actually yielded possession to the plaintiffs, and thereby caused a break. The evidence bearing upon this point is quite contradictory, the most favorable to plaintiffs being that of George P. Robertson himself. His statement is, that, before he bought interests of some of the DeMoss heirs, he said to Sorelle and Logan that they might buy if they chose, but that if they did not wish to buy, he would do so; that they replied that they did not want to buy and that he might go ahead; that thereupon he bought, and, in the summer of 1897, went to the land preparatory to fencing it, and ran out a portion of the lines, in doing which he was assisted, without objection by Logan, that, a few days afterwards, he went again, prepared to fence, and, while he was building the fence, Logan questioned his right to do so, saying that it was all right if he (Robertson) had bought the heirs' title, but otherwise not; that Logan went to the county seat to see if Robertson's deed was on record and returned next day, saying he found no deed to Robertson on record, that he had taken legal advice, and objecting in violent terms to the fencing. The result of it all was that Robertson extended a fence so as to cut Logan, who lived on the south half of the survey, off from the north half except that by agreement an opening for access was left in the division fence. Robertson also put material on the north half for a house. In a few days Logan tore down the fence and

removed the material, and this suit was brought soon afterwards. We think it evident that these facts do not sustain the contention. Logan continued as before in the actual possession and use of the land, which was otherwise enclosed with other lands, as his pasture, and did not yield possession and was not ejected therefrom by the acts of Robertson. The latter never gained the possession of any part of the land, but the whole continued in Logan's actual possession. We are not here speaking of the rule of the common law that a sufficient entry by the owner of premises, adversely held, operates, of itself, as an interruption of the statute of limitations in favor of the possessor, for that rule is changed by the statute which defines a peaceable possession as one which is "continuous and not interrupted by adverse suit to recover the estate." Speaking of this provision, in its effect upon a different question, this court in Shields v. Boone, 22 Texas, 198, said: "In the act of 20th of December, 1836, it was said, 'a peaceable possession can only be interrupted by an actual suit being instituted and prosecuted agreeably to the due forms of law,' etc. We do not think the legislature intended to change the law," meaning that no change from the law of 1836 was intended by the existing statute. From this it is evident that a possession which is continuous can only be interrupted by suit; and hence the necessity of plaintiffs showing in order to sustain this contention, that they actually received the possession from Logan, so as to break its continuity.

This action was brought before the expiration of ten years after the lease of Jenkins and Robertson to Willard and Sorelle, of May 24, 1888, but G. P. Robertson, who owned only an undivided interest in the land, was the only plaintiff and did not sue for the benefit of his cotenants. These did not sue until the expiration of ten years, and those of them against whom limitation could operate were therefore barred. Stovall v. Carmichael, 52 Texas, 383.

The judgment must therefore be reversed, and, in order that all of the questions may be properly tried, we think it best that the cause be remanded.

In what we have said as to the findings upon questions other than those we have discussed at length, we are not to be understood as precluding another trial of those issues. With reference to the possession of Willard and Sorelle, after the judgment and prior to the lease from Jenkins and Robertson, we deem it proper also to say that the question as to whose possession it was during the interval is not necessarily whether or not there was a contract between these parties for the renting of the land, as the court put it to the jury. Under the authorities cited, any arrangement or understanding by which Willard and Sorelle held for or under Jenkins and Robertson would be sufficient, whenever the tenancy of the former under Lunn and Joiner was lawfully terminated. Just when this was has not been discussed and we shall not undertake to determine. The judgment by itself did not make the possession of the tenants that of Jenkins and Robertson. Thomson v. Weisman, 98 Texas, 170.

The defendants impleaded J. M. Robertson as warrantor and, at a term prior to that of the trial, a severance was granted as to him, and subsequently plaintiffs in error asked that this action be rescinded,

which was refused. Without determining whether or not the matter is so presented as to have required action at our hands if there were no other ground for reversal, as the case is to go back we may say that the action seems to deprive the plaintiffs in error of the right given them by statute to have their warrantor a party to the action. We can think of no circumstances which would justify a severance as to such a party, nor any way in which the defendants can enjoy the rights given them by the statute, if the severance be allowed to stand. The order of severance would therefore be set aside and the warrantor retained as a party to the case. Other questions urged will not probably arise again.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

The motion and argument accompanying it fail to convince us that we were wrong in holding that the evidence conclusively established the defense of ten years limitation against some of the plaintiffs. The defendants in error now ask that, if we adhere to the view expressed on this point in the original opinion, we render final judgment in accordance with that view. The record is so complicated and involved that, in deciding the case originally, we did not feel that it would be safe to attempt to ascertain the facts essential to such action without having heard the parties upon it. Those facts are now stated in the motion, with references to the record to verify the statement, in such way as to enable us to comply with the suggestion and put an end to the litigation. Agreements contained in the transcript and the findings of the trial court and of the Court of Civil Appeals establish all of the facts essential to a rendition of judgment, none of the findings having been found erroneous except that as to the defense of limitation under the ten years statute.

From the statement given it is apparent that George P. Robertson, who is not affected by the defense sustained, owns an interest of 680-2016, and others of the plaintiff, who were protected by disabilities, own interests as follows, viz.: Gertrude E. Vincent, Amanda J. England and Elizabeth Flowers, 36-2016 each; E. Jane Robinson, Catharine Tumlinson, Josie DeMoss and Isabella Hunter, 18-2016 each; Charles Moore, Sarah C. White, Nancy Grunewald, Telitha Collier, Cornelia Ratliff, Mary Blagg and Fannie Lee own 4-2016 each; Etta Agee and Ardelia Shanks own 2-2016 each; John Pace, Otta Pace, Danna Bonner and Zilla Bonner own 1-2016 each; Josephine Pierce owns 144-2016; Augusta M. Willard owns 12-2016; Octavia A. Bozarth owns 24-2016; Ellen O. Blackburn owns 8-2016, making a total of 1084-2016 of the land involved in this writ of error that the named plaintiffs are entitled to recover, and judgment will be rendered in their favor for that interest, and for a proportionate part of $325.30 adjudged to plaintiffs by the trial court for rents, and against the remaining plaintiffs that they take nothing as against plaintiffs in error, C. C. Cobb and the Canadian and American Mortgage & Trust Company, Limited.

The defendants in error in their statement claim that Catharine Phillips is entitled to recover an interest, and it is true that she inherited a share of the land, but the record shows, and the court below found that she had conveyed it before the suit was brought. The facts with respect to this are that J. L. Stagner, Price Stagner and Catharine Phillips inherited interests through their father and mother. J. L. Stagner made a general assignment for the benefit of creditors which passed his inherited interest to his assignee, who conveyed it to George P. Robertson. Some years after this assignment, Price Stagner and Catharine Phillips, joined by her husband, conveyed their interests to J. L. Stagner, and, he having died, those interests passed to his heirs who were not parties to the suit. Consequently neither Mrs. Phillips nor Robertson has title to this interest.

In the district court the plaintiff, George P. Robertson, recovered judgment against M. Logan for $350 as damages for the value of lumber converted, which was affirmed by the Court of Civil Appeals. Logan did not join in the application for this writ of error and hence that part of the judgment of the district court as well as the part of the judgment of the Court of Civil Appeals affecting only the south half of the DeMoss survey are unaffected by the action taken by this court.

J. M. Robertson has filed a motion stating that he was not served with citation in error before the cause was submitted to this court and asking that the portion of the opinion affecting him be eliminated. The original opinion was written on the assumption that the cause was to go back for another trial; but the action now taken in rendering final judgment as between the other parties makes it unnecessary that this court disturb the action of the district court as to him. While we think the court should not have allowed the severance, it is now a fact accomplished and furnishes no reason for remanding the cause as between the other parties as this would not remedy the trouble or protect the plaintiffs in error in any right or remedy which they can not enforce against their warrantor as the case stands.

A question has been raised as to whether mandate should issue from this court to the district court upon this branch of the case, or should issue to the Court of Civil Appeals, in order that the judgment of the latter court might be conformed to that here rendered and that mandate might be issued therefrom showing the disposition of the whole case. In entertaining the application for writ of error of the present plaintiffs in error from the judgment of the Court of Civil Appeals against them, this court treated the controversy between those parties and the original plaintiffs, affecting the title to the north half of the DeMoss survey only as distinct from the controversies between the original plaintiffs and the other defendants concerning other matters. The judgment of the Court of Civil Appeals upon the other controversies was unaffected by the writ of error, and the cause as between parties other than those to the writ of error remains in that court. It can therefore issue mandate upon all parts of its judgment not involved in this proceeding. But the cause as between the parties to this writ of error was removed to this court, and, final judgment being here rendered, the proper practice is for the mandate upon it to issue from this court to the trial court as in any other cause finally decided here.

Rehearing granted and judgment rendered in accordance with former opinion, reversing the judgment of Court of Civil Appeals, and further as above stated, costs to be adjudged as before.

*Judgment rendered.*