[Opinion delivered October 31, 1882.]

| 58 | 53 |
| 75 | 409 |
| 58 | 53 |
| 79 | 306 |
| 58 | 53 |
| 91 | 524 |

## JAMES S. PORTER v. GEO. W. CHRONISTER.

### (Case No. 1244.)

1. COMMUNITY PROPERTY.— The heirs of the wife of a colonist in Peters' colony, who with her husband emigrated to the colony in 1845, and who died in 1849, were, by reason of her emigration and settlement, entitled to the community interest of their mother in land appropriated by a certificate to her husband as a colonist under the act of January 21, 1850. Such interest could be enforced against a purchaser of the certificate from the husband after the death of the wife, who procured a patent for the land to himself as such purchaser and assignee.

2. BANKRUPT SALE.— A bankrupt sale of the interest of the father in the land would not affect the rights of the heirs of the mother.

3. LIMITATION.— The five years' limitation cannot be available to one who invokes it, unless the deed evidencing the claim under which he entered has been recorded; and it is not sufficient that some former deed in his chain of title has been so recorded.

APPEAL from Grayson. Tried below before the Hon. Joseph Bledsoe.

On December 30, 1876, appellees brought this action of trespass to try title against appellant and others, to recover a one-half interest in and to the land described in their petition, claiming as the com-

munity interest of their deceased mother; claiming that John Chronister and Elizabeth, their father and mother, emigrated to Peters' colony, and settled upon the land in controversy in 1845; that Elizabeth died in 1849, leaving appellees George and Sarah, and two other minor children since deceased without issue; that the father procured a certificate for six hundred and forty acres by virtue of such emigration and settlement, under the act of January 21, 1850, and applied a portion of it to this land, and that afterwards he sold and conveyed the land in fraud of their rights.

The defendants all answered by a plea of not guilty, three and five years' limitation.

On October 6, 1877, the cause was tried by the court, and judgment was rendered for appellees for three-fifths of the land, from which Porter appealed. The points presented by the assignment of errors are: 1st. The court erred in holding that the land was the community property of Chronister and wife. 2d. The court erred in excluding from evidence the transcript of the bankrupt proceedings in the estate of Wells. 3d. The judgment is excessive.

*Hare & Head,* for appellant.

I. The patent to Blagg having vested in him the legal title to the land, plaintiffs' claim was only equitable, and, having accrued more than twenty years before the institution of the suit, was a stale demand. Wimberly v. Pabst, 5 Tex. L. J., 161; McKin v. Williams, 48 Tex., 92.

II. A suit to partition part of an estate will not be maintained when it is shown that there was other land out of which plaintiffs may have received their full interest, unless such other land be accounted for. Battle v. Johns, 49 Tex., 210; McAllister v. Farley, 39 Tex., 552; Arnold v. Cauble, 49 Tex., 527.

III. The acquiescence of plaintiffs in the sale of this land by their father, from 1850 to 1876, raises the presumption that it was sold to pay community debts, and, there being no evidence to the contrary, the court should have so found. Veramendi v. Hutchins, 48 Tex., 531.

*Throckmorton & Brown* and *G. A. Brown,* for appellees.

WATTS, J. COM. APP.— Was the land in controversy the separate property of John Chronister? He emigrated to Peters' colony with his wife and children, and settled upon this land in 1845; the wife died in 1849, and he applied for and secured a certificate for six

hundred and forty acres, by reason of that emigration and settlement of himself and family, under the act of January 21, 1850. Subsequently a portion of this certificate was applied to the land, which was thereafter patented to Blagg as assignee of John Chronister.

Upon these facts we think the case of Hodges v. Donald, 55 Tex., 344, conclusively determines that the land was not the separate property of John Chronister, but the community property of himself and deceased wife, and of which the children inherited the wife's interest.

By the third assignment of error, it is claimed that the court erred in excluding as evidence the transcript from the United States district court, containing certain orders, applications, etc., in the bankrupt estate of Wells. The objections urged against the transcript were: 1st. That it did not appear that Wells was ever adjudged a bankrupt. 2d. It does not appear that the land in question was ever ordered to be sold. 3d. There is no order confirming the sale by the assignee. 4th. The assignee, Bennett, had no power to substitute Donoho as assignee. These objections were sustained by the court, and the transcript and deed of the assignee to Long was excluded. We will not undertake to consider these objections in detail; taken together they amount to this, that the transcript was excluded because it was not complete within itself.

The general rule is, that it is not necessary to the admission of such evidence that it show title complete within itself; but that it is admissible if it tends to establish the issue. Other evidence may be adduced supplying all the omissions in the transcript. In passing upon the question, therefore, the court is not called upon to determine that the transcript offered is full and complete evidence of the contested fact, but whether it tends to establish such fact. To illustrate, the appellant, for anything appearing to the contrary, might have been able to produce other evidence of the fact that Wells had been adjudged a bankrupt, and that the sale by the assignee had been confirmed, if such evidence was necessary.

However, the exclusion of that evidence in the attitude of this case was immaterial. A regular sale and conveyance in the proceeding in bankruptcy would no more defeat the right of these children to the community interest in the land, than would the conveyance of the father accomplish that end. Yancy v. Batte, 48 Tex., 46; Johnson v. Harrison, id., 257; Veramendi v. Hutchins, id., 531.

Nor could the exclusion of the transcript and deed have any influence upon the appellant's right to recover under his plea of five

years' limitation. The deed from Long to appellant, under which he claims to have entered and held adverse possession of the land for five years prior to the institution of this suit, is not shown to have ever been recorded. To give title to land under the five years' statute, the deed or deeds under which the party asserting the plea holds possession must be duly recorded. It is not sufficient that some deed in the asserted chain of title under which he enters is duly recorded. For that would not constitute the requisite notice of the character of the adverse possession held by the party. Possession is merely an introductory fact; a link in the chain of facts necessary to the acquisition of title to the land under the statute. And where the adverse possession is unaccompanied by a recorded deed evidencing his claim, no title can possibly be acquired under the five years' statute.

In asserting five years' limitation it is not essential that the party should deraign or attempt to deraign title from the sovereignty of the soil; in this particular all the requirements are met if it be shown that he holds under a deed or deeds duly recorded, which were executed to him.

We are of the opinion that there was no error in the rulings of the court excluding the transcript and assignee's deed, and in holding that the five years' limitation was not applicable to the facts in this case.

The objection that the judgment was excessive is well taken. Long after this appeal was perfected and the transcript filed in the supreme court, appellees filed a motion in the court below, in which they remit all of the judgment except seven-sixteenths of the land in controversy, and that court entered an order accordingly. It would seem that the court below would have no jurisdiction pending the appeal to allow the *remittitur;* but be this as it may, the appellant has filed a *remittitur* to the same effect in this court. And we are of the opinion that the supreme court ought now to reverse the judgment, and render such judgment as ought to have been rendered in the court below.

REVERSED AND RENDERED.

[Opinion approved November 6, 1882.]