CARRIE A. HOPKINS, GUARDIAN, ET AL. v. SAMUEL B. HOPKINS.

No. 1978.   Decided November 10, 1909.

**Deed—Life Estate—Remainder—Heirs—Children—Rule in Shelley's Case.**

A deed conveyed land to the grantor's son and his heirs "upon the terms and conditions hereinafter stated"; the habendum clause and special warranty of title were to him and his heirs; a subsequent clause provided that the intention was to vest sufficient title in him so that he could enjoy it and receive the benefits for life as though he had a fee-simple title, and at his death his children are to have a fee-simple title; should he die without issue "then the title," etc. The mother died leaving three children of the marriage; the father married again leaving a widow and a daughter of the second marriage. In an action by the grantee to obtain construction of the deed, it is held:

(1) That the grant to the son and his heirs "upon the terms and conditions hereinafter stated" made such conditions a part of the granting clause and created a life estate only in the grantee, in spite of the use of the word "heirs." (P. 18).

(2) That the words "heirs," "children" and "issue" were used indiscriminately by the grantors, and "heirs" used in the sense of "children" or "issue," not in its technical legal meaning, and the remainder to "children" was a valid disposition of the estate. (Pp. 18, 19).

(3) That the grantee took only an estate for life, with remainder to his

"children" or "issue," taking by purchase, and his estate was not converted into a fee simple by the application of the "Rule in Shelley's Case." (Pp. 17–20).

(4) That since he took only a life estate the provision that in a named event the land should go in accordance with the laws of descent and distribution would not devolve the title upon his legal heirs. (P. 20).

Error to the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

The guardian of a minor obtained writ of error on affirmance of a judgment for plaintiff, S. B. Hopkins, for the recovery of land.

*D. H. Morrow,* and *Lewis & Phillips,* for plaintiffs in error.—Every part of a deed must be given effect, if possible, and that intention gathered from entire instrument is controlling. Hancock v. Butler, 21 Texas, 804; Simonton v. White, 93 Texas, 55; Risien v. Brown, 73 Texas, 141; Moore v. City of Waco, 85 Texas, 210; Rev. Stats., art. 632; Bell County v. Alexander, 22 Texas, 351; Pugh v. May, 60 Texas, 191.

Appellee took a life estate only by said deed and not a fee simple in virtue of the rule in Shelley's case. Cases cited above, and in addition: Mitchell v. Simpson, (Ky.) 10 S. W., 372; 2 Washb. Real Prop., secs. 6, 1, 16.

Valid limitations of the fee, after the termination of the first fee, were made therein. Lockridge v. McCommon, 90 Texas, 234.

The final estates limited in said deed are not perpetuities, because the language is susceptible of a construction which will make the final limitation take effect within the period of a life or lives in being and twenty-one years and ten months afterward, and the law will adopt the construction consistent with a lawful intention. Hancock v. Butler, 21 Teaxs, 804; Smith v. Brown, 66 Texas, 543; Macmanus v. Orkney, 91 Texas, 31.

If the final estates limited in said deed were entailments or perpetuities, they could have no effect upon the valid prior estates limited by the deed. Hopkins, Real Prop., 325; 1 Jarmon on Wills, 200, 783; Lewis on Perp., 657, 2 Bl. Com., 156; 4 Kent Com., 130.

*Davis & Thomason,* for defendant in error.—The granting, the habendum and warranty clauses being to the grantee and his heirs, the deed clearly comes under the rule in Shelley's case and is not controlled or affected by any subsequent clause in the deed expressive of intention. Brown v. Bryant, 17 Texas Civ. App., 454; Singletary v. Hill, 43 Texas, 588; Hart v. Sansom, 110 U. S., 153; White v. Dedmon, 57 S. W., 870; Johnson v. Morton, 67 S. W., 790; Scott v. Brin, 48 Texas Civ. App., 500; 2 Washburn on Real Property (3d Ed.), 396; 23 Am. & Eng. Enc. of Law, 644.

Under the rule that the first deed and the last will prevails, and if repugnant clauses in a deed can not be reconciled the clauses conferring upon the grantee the greatest estate will be retained and the other clauses rejected, the deed under consideration vested in the grantee a fee simple title. 17 A. & E. Enc. of Law, 8; Green Bay etc. Co. v. Hewett, 65 Wis., 96; 42 Am. Rep., 701; Maker v. Lazell, 63 Me., 562, 23 Am. St. Rep., 795.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This action was brought by defendant in error to obtain a construction of a deed and an adjudication that it vested in him a fee simple title to the land conveyed by it.

A copy of the deed in question is attached to the petition and is from S. B. Hopkins and his wife, Mary B. Hopkins, to plaintiff, their son. It states that it is made in consideration of love and affection, and the parts material to the decision are as follows in their order: (1) Granting clause, "unto our said son, Samuel Bunch Hopkins, and to his heirs, upon the terms and conditions hereinafter stated;" (2) Habendum clause, "to our said son and his heirs;" (3) Special warranty of title to "said premises unto our said son, Samuel Bunch Hopkins, and his heirs;" (4) The following: "The intention of this conveyance is to vest sufficient title in our said son, Samuel Bunch Hopkins, to the above described property, so that he can, during his life, use, occupy and enjoy it, and receive therefrom all the benefits as completely as though he had a fee simple title, and at his death his children are to have a fee simple title. Should our son, Samuel Bunch Hopkins, die without issue, then the title to said property is to revert in us as completely as though this conveyance had never been made, if we are living, if we are not living, then according to the descent and distribution laws of Texas, such of our heirs are to receive and have the same title as he gets, and whoever inherits said property hereafter shall have a fee simple title." We have, for convenience in reference, numbered the clauses.

It appears from the petition that both the grantors are dead, leaving three children, plaintiff and two sisters. The father, however, survived the mother and married again and left a widow and a daughter, Carrie B. Hopkins, the plaintiff in error. This widow and the two full sisters and the half-sister of plaintiff are the defendants in this action. The defense is made in behalf of the minor half-sister, and was presented only by demurrer to the petition, which was overruled and judgment was rendered for plaintiff in accordance with his prayer. The appeal from this judgment and, upon its affirmance, this writ of error were prosecuted in behalf of the minor.

The question argued is, whether the plaintiff took a fee simple title, or only an estate for life. It is the contention of the plaintiff below, sustained by the Court of Civil Appeals, that the deed vested in him the fee by force of the rule in Shelley's case, which is briefly thus stated: "If an estate for life, or any other particular estate of freehold, be given to one, with remainder to his heirs, the first taker shall be held to have the fee, and the heirs will take by descent, and not by purchase." Counsel for defendant (plaintiff in error) contend that the rule has no application, for the reason that, if we try to apply it to the granting clause, the habendum clause, and the warranty, without regard to the words, "upon the terms and conditions hereinafter stated," we find, not a life estate, but a fee simple estate granted to the first taker; while, if we regard the words just quoted and the last provision in the deed to which those words

evidently refer, we find a life estate granted to the first taker and a remainder, not to heirs, but to children. The several parts of the deed are not to be considered without reference to each other, but are to be construed together and the effect of one upon the other so determined; and a question upon which the decision must depend does thus arise as to the application of the rule in Shelley's case.

The grant in the first clause to Samuel Bunch Hopkins and to his heirs, if that were all, unquestionably would create in him a fee simple; but we can not stop at those words, because the clause itself does not stop with them. The added words, "upon the terms and conditions hereinafter stated," are a part of the granting clause itself and of equal dignity with the other language of that clause. Until we look to other parts of the deed to see the "terms and conditions," we can not rest upon the assumption that the estate granted is such as the other words, by themselves, would convey; for, as we shall see, it was competent for the grantors, notwithstanding the use of words proper to the creation of a fee simple, to show by other provisions in the deed that those words were used in a restrictive, but legitimate, sense, in which they would create a life estate only. The reference in the first clause to other parts of the deed for provisions that might determine the quantity of the estate granted had the effect of importing into the granting clause those other parts and of making them a part of that clause as fully as if they had been written therein. The deed, thus read, is a grant to the first taker and to his heirs, the estate granted to the former being in effect further defined as a life estate. If this were all, the rule in Shelley's case would undoubtedly control and vest in the first taker a fee simple. But, after restricting the first estate to one for life, the deed grants the remainder in fee to the "children" of the first taker. It then provides for a reversion to the grantors, if living, should the first taker die without "issue." We think it obvious that those who are to take after the death of the first taker are thus called indiscriminately "heirs" and "children" and "issue." The legal effect of the deed depends on the meaning of the grantors in using those words. If they meant heirs in the legal sense, that is, those appointed by law to take by inheritance from the first taker in regular succession from generation to generation, the rule in Shelley's case would apply and vest the fee in him; for no mere declaration of an intention to limit the estate to one for life could prevail over the effect given by law to the use, in its legal sense, of the technical word, "heirs." On the other hand, if that word was used, as it often is used by unskilled persons, only to designate the children, or the issue, who should be living at the death of the first taker, to take by purchase, as remaindermen, it expresses a perfectly lawful intent to which effect must be given. The real difficulty often arising in such cases results from the misuse of words, and is experienced in fixing upon those which express the true intention of the grantors; for the word, "heirs," is often used in the sense of issue, and even of the still more restricted one of children, while both the latter terms may be used when those to take generally by inheritance, as heirs in the broadest sense, are in mind. (2 Washb. Real Property,

653, 654.) In this case, however, we have not found much difficulty in reaching the conclusion that the grantors, when they used the words "heirs" and "issue" and "children," all the time had in mind one or the other of two classes of persons, viz.: such "children" as the first taker should leave at his death, or such "issue" as he should leave at that time. All that militates against this view is the use of the word, "heirs." As we have seen, it is always permissible to ascertain from the whole language of an instrument that that word was used in a narrower sense than its true one, and to give to it the effect it should have in that narrower sense, provided the other language clearly indicates the restricted use. When the word is first used in this deed, referring to those who are to take after the first taker, it is at once followed by others which point to explanatory provisions to be introduced later. We look to those and find the words "children" and "issue," referring to the same class, in provisions whose validity depends on the interpretation of all of the words in a sense more restricted than the true sense of the word first used. The estate first granted is in effect declared to be one for life, which it could not be if the remainder in fee really were limited to heirs. But the remainder in fee is granted to "children" and not limited to heirs, and this is a perfectly valid disposition, unless the word "children" is to be read as meaning "heirs" broadly. This we think should not be done. The clear intent can have effect by construing the words as we have indicated.

According to the principle uniformly applied by this court in this very connection, the construction which carries into effect the intention, where that is lawful, is to be adopted in preference to that which defeats it. (Hancock v. Butler, 21 Texas, 804; Simonton v. White, 93 Texas, 50.)

That by "children" and "issue" the grantors did not mean "heirs" in the general sense essential to the application of the rule in Shelley's case, is indicated by the phrase, "at his death," which designates those persons of the class intended then living who are to take the fee by purchase and not by inheritance. (Hancock v. Butler, supra, at p. 817.) Those words properly are words of purchase, and in order to treat them as words of limitation such use of them must clearly appear. The word, heirs, can not be held to have that effect when the instrument shows, as we think this does, that it is the one mistakenly used.

We might pursue the discussion through the other language of the fourth clause to show the plain intention of the grantors to restrict the first taker's interest to a life estate and to grant the remainder in fee to his children or issue, but the question at last turns upon the meaning of the word "heirs" in this particular deed and we have no doubt that it was used in the sense of one or both of the later words, "children" and "issue." Whether "children" is to be broadened to mean "issue," or "issue" narrowed to mean "children" is wholly immaterial to this controversy, since either word designates as remaindermen, to take by purchase and not by inheritance, a class of persons to be ascertained at the death of the first taker. When we find the sense in which "heirs" is used in the first clause, there

is no reason whatever for assuming that the word has a broader meaning in the second and third clauses.

It is argued that the warranty to Samuel Bunch Hopkins and his heirs has especial force in favor of plaintiff's contention, since he would leave nothing to his heirs if he took only a life estate and there would therefore be nothing for the warranty to heirs to operate upon. But if the heirs referred to are merely the children, or issue, as we have held, and take the fee by purchase, the warranty applies as fully as if the fee vested in the ancestor and descended to the heirs by inheritance. Neither the habendum nor the warranty clause furnishes anything to change the question as it arises upon the granting clause.

We do not intend to determine questions as to rights that may arise in others than children, or issue, under the fourth clause, since our conclusion that plaintiff took only a life estate ends the case. We may say, however, that this conclusion results in the further one that the provision that, in defined circumstances, the estate is to go according to the law of descent and distribution, can not mean that it is to go to the heirs of Samuel Bunch Hopkins, Jr., since only a life estate is vested in him.

The exception to the petition should have been sustained, and, as there is no probability that a better case can be stated, the proper judgment to be here rendered is one of reversal and dismissal.

*Reversed and dismissed.*