McMAHAN et al. v. McMAHAN et al.
(No. 7757.)

(Court of Civil Appeals of Texas.   Dallas.
Oct. 20, 1917.   Rehearing Denied
Nov. 17, 1917.)

1. WILLS ⬥◯608(2)—CONSTRUCTION—RULE IN SHELLEY'S CASE.
The rule in Shelley's Case does not preclude a construction of the technical words "heirs of the body" so as to ascertain the testator's intention.

2. WILLS ⬥◯608(3)—ESTATES DEVISED—RULE IN SHELLEY'S CASE—"HEIRS OF THE BODY."
An item of testator's will giving, devising, and bequeathing to a daughter named "for and during her natural lifetime only, with the remainder and fee in the heirs of the body of my said daughter, if any, and if no bodily heirs, then to descend and pass as in item 6 of this will, the following lands," devised to the daughter a life estate only, where in construing such item with the others it is apparent that the phrase "heirs of the body" did not mean heirs in the legal sense, making the rule in Shelley's Case applicable, but only children of the daughter who should be living at her death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs of the Body.]

3. WILLS ⬥◯457 — CONSTRUCTION — TECHNICAL WORDS.
It is permissive to consider the language of the whole will for the purpose of ascertaining the intention of the testator, provided the language so considered indicates that the words "heirs of the body" were used in a narrower sense than their true one.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by Mrs. Ethel McMahan and others against Harry McMahan and others for construction of the will of P. M. Greenwade, deceased. From the decree rendered, a motion for new trial having been overruled. the guardians ad litem of the infant defendants appeal. Reversed and rendered.

G. D. Tarlton and Morrow & Morrow, all of Hillsboro, for appellants.   J. J. Averette, of Houston, and Wear & Frazier, of Hillsboro, for appellees.

TALBOT, J.   This suit was instituted by the appellees, Mrs. Ethel McMahan and others, against certain children of P. M. Greenwade, deceased, and against Harry McMahan and others, who were minors and grandchildren of the said Greenwade.   The purpose of the suit was to have the will of P. M. Greenwade construed and obtain an adjudication that it vested in appellee Mrs. Ethel McMahan, under the rule in Shelley's Case, a fee-simple title to certain land therein devised to her, as shown by item 3 of the will. W. C. Morrow and Tarlton Morrow, composing the law firm of Morrow & Morrow, were appointed guardians ad litem of the minor defendants, and upon a hearing in the trial court the contention of the appellees that the rule in Shelley's Case was applicable to the item of the will in question was sustained, and a decree entered to that effect.   A motion for new trial having been overruled, the guardians ad litem prosecuted an appeal for the minors to this court.   There is no controversy about the facts.   The will of P. M. Greenwade was probated in Hill county, Tex., and was introduced in evidence on the trial of this case.   Parol evidence was offered to the effect that P. M. Greenwade was married twice; that his second wife survived him; that he left four children by his first wife and three by his second wife; that the children of his second wife were Mrs. Ethel McMahan, one of the appellees, and Mrs. Julia McCowan and Mrs. Nena Owen; that Mrs. Ethel McMahan was the only one married at the time the will was made; and that she has children.   We shall state and quote only so much of the will as we deem material or important to be considered in determining the question presented.   By the second item of his will P. M. Greenwade devised to his wife, Myra L. Greenwade, "for and during her natural lifetime only," with remainder to his daughters, Ethel McMahan, Julia Greenwade, and Nena Greenwade, his "plantation of nearly 400 acres of land adjoining the city limits of Whitney in Hill county, Texas."   In this clause of the will the testator further says:

---

"I also will and provide that the remainder of fee so devised to our said daughters, Ethel McMahan, Julia Greenwade and Nena Greenwade, shall pass to them share and share alike, or to the heirs of their body should either of them be dead and leave such heirs, but should either of them die before the death of my said wife, Myra L. Greenwade, and leave no heirs of her body, then the share or portion to which she would be entitled, if living, shall pass to and descend to the other two, if living, but if one of the other two should be dead, then to the one living and the bodily heirs of the deceased one, if any, but if no bodily heirs then the survivor of them shall take the whole remainder or fee, my intention being that the children only of my present wife, Myra L. Greenwade, shall take and hold this remainder of fee."

Item 3 of the will, and the one directly involved in this suit, or so much of it as is necessary to state, reads as follows:

"Subject to item XII of this will, I give, devise and bequeath to my beloved daughter Ethel McMahan, for and during her natural lifetime only, with the remainder and fee in the heirs of the body of my said daughter, if any, and if no bodily heirs then to descend and pass as in item VI of this will the following lands: [Then follows the description of several tracts.]"

In items 4 and 5 of the will the testator made similar bequests to his daughters Julia Greenwade and Nena Greenwade, both of whom since the execution of the will have married and become Mrs. Julia McCowan and Mrs. Nena Owen, respectively. The material part of item 6 of the will is as follows:

"I will, desire and direct that should all or either of my said daughters, Ethel McMahan, Julia Greenwade and Nena Greenwade, die without leaving a child or children of her body, then the share or portion herein devised to her in items III, IV and V, respectively, shall pass and descend to all my children named in item XI of this will, who are then living and the bodily heirs of such of them as may be dead, if any, per stirpes, my intention being that my estate shall remain in my own family."

Item 11 reads thus:

"Subject to item XII of this will, the entire balance and residue of my estate at the time of my death, after the payment of all of my debts and funeral expenses, and all of the bequests named in this will, and wheresoever situate, be it real, personal or mixed, I will, devise and bequeath to my beloved wife, Myra L. Greenwade, and to my children, James W. Greenwade, Pines S. Greenwade, Pearl Greenwade, Clay, Ethel McMahan, Julia Greenwade, and Nena Greenwade, if living, but should any of them die before I do and leave no bodily issue, then the share or portion to which he or she would be entitled under this item, shall pass and descend to those of them who may be living, and the bodily heirs of such of them as may be dead, if any, per stirpes."

In item 12 of the will, and which is referred to in item 11, above quoted, the testator, after stating in effect that he knows the property he has, its value and condition, better than any other person, and that he had no desire to discriminate against his wife or either of his children, but that he simply desired to be just and fair to each of them and to place such restrictions and conditions only upon the bequests made them as his long experience had taught him to be best for them and each of them, he says:

"I therefore declare, will and direct that should my beloved wife or either of my beloved children, or the bodily issue of them or any of them, refuse to accept this will and the terms and conditions herein contained, then and in that event and as to such one or more of them as shall contest this will, I do cancel, withdraw and annul, set aside and for naught hold, any item or provision of this will which gives, devises and bequeaths to such contestant or contestants any property or thing whatsoever, but it is my will and desire that such contestant or contestants shall take nothing whatever from or under this will, and it is my will and I direct that the property, real, personal or mixed, devised herein to such contestant or contestants, be it especial or residue, shall pass to such of them only as shall not contest this will, in all things and in all respects as though such contestant or contestants were dead, without leaving bodily issue, and as herein provided should they die, and to be distributed and disbursed among those of them who shall not contest this will."

[1] The question for decision is whether the appellee Mrs. Ethel McMahan by the terms of the third item of her father's will acquired a fee-simple title to the land thereby devised to her or only an estate for life. The trial court held, as shown by its judgment, that the testator, Greenwade, used the words "heirs of the body," "child or children of her body," and "bodily heirs," found in the will interchangeably, but that by the words "child or children of her body" in every connection in which they appear in the will the testator meant "heirs of the body" or "bodily heirs," in the general sense essential to the application of the rule in Shelley's Case. It is clear that the third paragraph of the will, standing alone, would by force of the rule in Shelley's Case vest in Mrs. Ethel McMahan a fee-simple title to the land therein described. This result would follow, notwithstanding it is declared in said paragraph of the will that the property therein described is bequeathed to Mrs. McMahan "for and during her natural life only," because of the use of the technical words "heirs of the body" of Mrs. McMahan by the testator to describe the persons who should take after her death. This rule, however, does not preclude a construction of the technical words so used so as to ascertain the testator's intention. Simonton v. White, 93 Tex. 56, 53 S. W. 339, 77 Am. St. Rep. 824. In McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412, it is said that:

"In construing the will all [of] its provisions should be looked to for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument."

This rule of construction has been announced and followed in many adjudicated cases, notably the case of Simonton v. White, supra, and the more recent cases of Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15, and West v. Glisson, 184 S. W. 1042.

In Hopkins v. Hopkins, cited, the Supreme

Court was called upon to construe a deed, and in the opinion of the court it is said:

"The several parts of the deed are not to be considered without reference to each other, but are to be construed together, and the effect of one upon the other so determined," and that, "according to the principle uniformly applied by this court, * * * the construction which carries into effect the intention, where that is lawful, is to be adopted in preference to that which defeats it"—citing Hancock v. Butler, 21 Tex. 804, and Simonton v. White, supra.

Following the rules thus announced, and after declaring that those who were to take in that case after the death of the first taker were called indiscriminately "heirs," "children," and "issue," the Supreme Court held that the word "heirs" was used in the sense of children or issue, not in its technical legal meaning, and that the deed in question vested in the grantee, son of the grantor and first taker, a life estate only in spite of the use of the word "heirs" with remainder to his children.

[2] Adhering to and applying the rules announced in the cases to which we have referred in the construction of the will before us, in what sense did the testator, Greenwade, use the words "heirs of the body" of his daughter Mrs. Ethel McMahan in the third item or clause of his will? Did he mean thereby "heirs in the legal sense, that is, those appointed by law to take by inheritance from the first taker, in regular succession from generation to generation"? Or were they used only to designate the children of Mrs. McMahan who should be living at her death? If the testator used the words in their legal sense, the rule in Shelley's Case would apply, and vest the fee in Mrs. McMahan, for no mere declaration of an intention to limit the estate to one for life could prevail over the effect given by law to the use in its legal sense of the technical words, "heirs of the body." But, on the other hand, if those words were used only to designate the children of Mrs. McMahan to take by purchase as remainderman, the rule in Shelley's Case would not apply and the testator's intention must be given effect. Without much hesitancy we have reached the conclusion that the testator when he used the words "heirs of the body of my said daughter" (Mrs. Ethel McMahan), in the connection in which they appear in the third paragraph of his will, had in mind and intended thereby to designate the children of Mrs. McMahan as the persons to take the estate devised to her at her death.

[3] This conclusion is based upon a consideration of the whole language of the will, and particularly that found in the sixth paragraph thereof, when read and considered with the express direction given by the testator in the third paragraph, which, as we have seen, is entirely permissible for the purpose of ascertaining the intention of the testator, provided the language so considered clearly indicates that the words "heirs of the body" or the like were used in a narrower sense than their true one. Hopkins v. Hopkins, supra. Looking to the third item or paragraph of the will, we find that the testator therein expressly directs, in the event Mrs. Ethel McMahan at her death leaves no "bodily heirs," that the land devised to her shall "descend and pass as in item 6 of the will, and similar direction is given with respect to the bequests made to his daughters Julia Greenwade and Nena Greenwade. In item 6 of the will, as has been seen, the testator wills and directs "that should all or either of my said daughters, Ethel McMahan, Julia Greenwade and Nena Greenwade, die without leaving" a child or children of her body, "the share or portion herein devised to her in items III, IV and V, respectively, shall pass and descend to all my children named in item XI of this will, who are living, and the bodily heirs of such of them as may be dead, if any, per stirpes, my intention being that my estate shall remain in my own family." Whether item 6 just quoted is or is not necessarily made a part of item 3 by the language of said items, they must be considered together in arriving at the meaning of, the testator in using the words "heirs of the body of my said daughter" and "bodily heirs" found in the third item. So considered, and having reference also to other language of the will, we think they should be construed to mean child or children of the body of Mrs. Ethel McMahan. The estate granted to Mrs. McMahan is expressly declared to be one for life "which could not be if the remainder in fee really were limited to heirs." As we view the will, the remainder in fee is granted to the "children" of Mrs. McMahan, and not limited to her heirs in the technical sense of that word. By so construing the language of the will the very clear intent of the testator can have effect, whereas, if the word "children," as used therein, is to be read as meaning heirs in its technical sense, it will be defeated, a result which is to be avoided. As pointed out in West v. Glisson, 184 S. W. 1042, it is very unusual for any one to die without "heirs," if this word be construed to mean "those appointed by law to take by inheritance from the first taker in regular succession from generation to generation," and manifestly it was not contemplated by the testator, Greenwade, that this would be the condition of his daughter Mrs. McMahan, since at the time of the execution of the will she had living a father, a husband, and brothers and sisters, who, if they had died prior to the death of Mrs. McMahan, would perhaps themselves, or some of them, have left heirs, who would probably in such an event have been the heirs of the daughter, Mrs. McMahan. In such case, however, it is evident, we think, that the testator did

not intend that such heirs should inherit the property or any part of it as heirs of Mrs. McMahan, but that said property should pass under the will.

We deem it unnecessary to pursue the discussion through the other language and expressions in the will which indicate that the intention of the testator was to restrict Mrs. McMahan's interest to a life estate and to grant the remainder in fee to her children. This counsel for appellants in their exhaustive brief have done. The question turns upon the meaning of the words "heirs of the body," or "bodily heirs," found in the will, and we have no doubt that they were used in the sense of "children." This is the controlling question in the case, and renders unnecessary a discussion of the propositions urged in appellees' supplemental brief. It will suffice to say that this case is not ruled by the authorities cited in that brief.

This conclusion requires that the judgment of the district court be reversed, and that judgment be rendered in this court in accordance with the views expressed in this opinion, and accordingly it is so ordered.

Reversed and rendered.