## DAUGHERTY v. MANNING et al.
### (No. 6378.)

(Court of Civil Appeals of Texas, San Antonio. April 7, 1920. On Motion for Rehearing, May 12, 1920.)

1. **Adverse possession 13 — Statutory requirements must be strictly complied with.**

To acquire title under the five-year statute of limitation (Rev. St. 1911, art. 5679), all the requirements of the statute must be strictly complied with.

2. **Adverse possession 43(4)—Delay in registering deed breaks continuity of possession.**

Under the statute of limitation of five years (Rev. St. 1911, art. 5679), requiring that title be claimed under deeds duly registered, a delay of five months in registering a deed in the chain of title under which adverse possession was claimed broke the continuity of the possession, and was not excused by the fact that the deed was placed in a bundle of registered title papers and that the grantee understood that a third person was to record the deed.

3. **Adverse possession 43(4)—Retention of vendor's lien does not prevent breaking of continuity when deed not registered.**

There was no continuous holding under deeds duly registered by a grantor and grantee where the grantee's deed was not registered for five months, though the grantor retained an express vendor's lien to secure payment of the purchase-money notes, on the theory that the grantee was holding under the grantor's registered title.

4. **Vendor and purchaser 257—Legal title does not pass where express vendor's lien is retained.**

Where a deed retains an express vendor's lien to secure payment of purchase money notes, the legal title does not pass out of the vendor.

5. **Adverse possession 82 — Deed under which land claimed must be registered, regardless of source.**

Under the statute of limitations of five years (Rev. St. 1911, art. 5679), the deed under which possession is held must be registered, whether it is a deed from a predecessor in title with whom the claimant holds in privity or a deed from any other source.

6. **Adverse possession 43(4)—Possession of vendee may be tacked to that of vendors if other elements present.**

Under the statute of limitations of five years (Rev. St. 1911, art. 5679), a vendee's possession may be tacked to the possession of those under whom he holds in privity, if all the other elements are present.

7. **Vendor and purchaser 257—Vendee entitled to possession in his own right, though lien reserved.**

Though a vendor's lien is retained in a deed, the vendee is entitled to possession and holds exclusively for himself, and not as agent or vendee for any one, but as the true owner against the world.

8. **Vendor and purchaser 257—Deeds reserving liens are executed contracts.**

As between a vendor, and vendee, a deed reserving an express vendor's lien is regarded as executed and not executory, except so far as necessary to collect the purchase money.

9. **Deeds 129(4)—Conveyance to one for life with remainder to children and their "descendants" construed.**

A deed conveying land to R. for her natural life, and at her death conveying the remainder to her children or their descendants in the proportions prescribed by the laws of descent and distribution, gave R. a life estate with remainder to her children surviving her or the descendants of children whom she might survive; the word "descendants" being construed as a word of purchase and not of limitation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Descendant.]

10. **Appeal and error 909(4)—Remainderman presumed, in support of finding, to have been born before delivery of deed.**

Where a deed delivered November 30, 1876, conveyed land to R. with remainder to her children or their descendants, it will be presumed, in favor of the conclusion and judgment below, that the only child of R., who was born some time in the year 1876, was born prior to November 30th, as the law favors vested rather than contingent remainders.

11. **Appeal and error 931(1)—Presumed, in absence of request for finding, that court found against appellant on sufficient facts.**

Where appellant requested no express finding on an issue, it will be presumed that the court based its judgment upon sufficient facts and necessarily found against appellant on that issue.

12. **Life estates 5—Remainderman not barred by life tenant's acquiescence in boundary.**

A life tenant's acquiescence in a boundary did not bar the remainderman during the existence of the life estate.

13. **Boundaries 48(7)—Not established by acquiescence in absence of knowledge.**

A boundary was not established by acquiescence, where plaintiff did not know that the fence was not on the true line and the means of ascertaining the correctness of the location of the line was equally open to the adjoining owners.

14. **Boundaries 48(6)—Long acquiescence not estoppel.**

Long acquiescence in a boundary will not alone constitute an estoppel.

15. **Appeal and error 265(1)—Findings not questioned without exceptions or request for further findings.**

In the absence of exceptions to the findings or request for further findings on an issue, the findings will not be questioned on appeal or the judgment disturbed.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**16. Appeal and error ⊙~907(3) — Without statement of facts, court assumed to have set out in findings all material evidence.**

There being no statement of facts, it will be presumed that the court in its findings set out all the evidence on the subject before it material on the issue.

**17. Appeal and error ⊙~1152—Admitted error in judgment corrected.**

An admitted error in the judgment against appellant, in that judgments were rendered against him for the same sum in favor of different parties, without providing that payment of one of the sums should be in full satisfaction of both judgments, will be corrected on appeal.

**18. Costs ⊙~238(2)—Judgment reversed at appellant's cost where corrections might have been obtained below.**

A judgment will be reversed at the cost of appellant where the errors were not called to the court's attention by motion to correct or otherwise, and would have been corrected if timely requested, and there is no objection to the correction.

On Motion for Rehearing.

**19. Appeal and error ⊙~907(3) — Judgment presumed supported by evidence, in absence of statement of facts.**

Where there is no statement of facts, it is presumed that the court had before it evidence sufficient to support the judgment.

Appeal from District Court, Travis County; Ireland Graves, Judge.

Suit by Mrs. Rebecca M. Manning against Mrs. Emma Johnson and others, in which the defendant named filed a cross-action against W. J. Daugherty and others. From a judgment against him, Daugherty appeals. Reformed and affirmed on rehearing.

M. G. Cox, of Cameron, for appellant.

John C. Read, of Dallas, and Black & Smedley, of Austin, for appellees.

COBBS, J. The plaintiff, Mrs. Manning, sued the defendant Mrs. Emma Johnson, T. S. Henderson, and E. D. Tompkins for the title and possession of the 122 acres of land herein referred to. The petition is in the ordinary form of trespass to try title, and the prayer is for title and possession and for damages for the use of the land.

The answer of the defendant, Mrs. Emma Johnson, consisted of a plea of not guilty, a plea of title by limitation under the three, five, and ten year statute, and a plea that, by reason of the construction of a fence, acquiescence in the fence as the boundary line, etc., the plaintiff was estopped from claiming that the fence was not on the division line between the two tracts. The defendant Mrs. Johnson, by cross-action, sued W. J. Daugherty, T. S. Henderson, E. D. Tompkins, Joe G. Jester, and L. M. Morrow, for recovery upon their warranties of title in the event plaintiff received the land. The defendants T. S. Henderson and E. D. Tompkins answered by a plea of not guilty and by adopting the answer of their codefendant Mrs. Johnson, and they filed a cross-action against W. J. Daugherty for recovery on his warranty in the event plaintiff recovered the land. The defendant W. J. Daugherty, in his answer, filed a plea of not guilty and adopted the answer of his codefendant Mrs. Johnson.

The plaintiff, in her supplemental petition, set up many special exceptions to the answers of the defendants, and denied the allegations contained in the answers, and for special reply to the several pleas of limitation filed by the defendants alleged that plaintiff was the owner of the land sued for and acquired the same under a deed executed by David Eppright and wife to Martha Ann Riggle on November 30, 1876, by which the land was conveyed to Martha Ann Riggle on November 30, 1876, by which the land was conveyed to Martha Riggle for and during her life, and in which deed it was provided that the remainder of the estate in the land conveyed by the deed should become the absolute property of the children of the said Martha Ann Riggle or their descendants; that by this deed a life estate was created in the land in Martha Ann Riggle, with remainder in her children living at her death and in the descendants of such of her children as might be dead at death; that said Martha Ann Riggle died on or about August 17, 1909, and that plaintiff was the only child of Martha Ann Riggle, and at the time of the death of Martha Ann Riggle there was no child living other than plaintiff and there was no descendant of any deceased child; and that, by reason of the foregoing facts, limitation did not begin to run against plaintiff during the life of Martha Ann Riggle. In her supplemental petition plaintiff also, for special reply to that part of the answers of the defendants alleging the establishment of a boundary line by estoppel, etc., denied that she had ever represented the fence described in the answer to be the boundary line or that she had acquiesced in it as such line; and said further that if Martha Ann Riggle or her husband, or either of them, had acquiesced in such fence line as a boundary line, their acts were not binding upon plaintiff and could in no way affect or change the boundary line of her land, for the reason that at the time of said alleged acts and representations on the part of Martha Ann Riggle and her husband the said Martha Ann Riggle owned only a life estate in the land, with remainder in the plaintiff.

The case was tried before the court, without a jury, and findings of fact and conclusions of law were filed, and there is no statement of facts with the record.

⊙~For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The court on May 28, 1919, rendered judgment for plaintiff, Mrs. Manning, for the title and possession of 70.8 acres of land more or less, part of that described in plaintiffs' petition, as described by metes and bounds in the judgment, and finds that the true division line between the tract of land claimed and owned by Mrs. Manning and the tract claimed and owned by Mrs. Emma Johnson be established as stated in the judgment, and rendered judgment in favor of Mrs. Manning against Mrs. Emma Johnson for $275 damages, but that she do not recover damages against the other defendants. The court further decreed that the defendant Mrs. Emma Johnson recover of W. J. Daugherty, E. D. Tompkins, T. S. Henderson, Joe G. Jester, and L. M. Morrow jointly and severally the sum of $5,939, with 6 per cent. interest per annum thereon from date of judgment, and that the defendants T. S. Henderson and E. D. Tompkins do have and recover of and from the defendant W. J. Daugherty the sum of $5,939, with 6 per cent. interest thereon from date of judgment, and rendered judgment for costs in favor of plaintiff against Mrs. Emma Johnson, T. S. Henderson, and E. D. Tompkins, and in favor of Mrs. Emma Johnson, on her cross-action, against W. J. Daugherty, T. S. Henderson, E. D. Tompkins, Joe G. Jester, and L. M. Morrow, for all costs of court by her in this behalf expended or incurred, and that T. S. Henderson and E. D. Tompkins do have and recover of and from W. J. Daugherty all costs or court in this behalf expended or incurred."

The first assignment presents the claim that the court erred in not holding appellant was entitled to recover the land under the plea of the statute of five-year limitation. The undisputed facts are that the five-year limitation title would have been complete in all of its elements except for the period of time it was not registered. Prior to January 1, 1913, the date when Jester acquired possession, the possession of defendants and their privies under deeds duly registered, accompanied by the other requisites of the five-year statute of limitation, had not been held for a period of five years, nor had such possession been held subsequently to the registration of the Jester deed June 5, 1913, and before the commencement of this suit. This suit was filed on the 16th of November, 1917. The first deed under which defendant's possession was held was duly registered on the 6th of February, 1912, and the registration and possession was continuous in defendant Johnson and her privies from that date until the filing of the suit, a period of 5 years and about 9 1/5 months, with the exception of the break in the registration from the 1st of January, 1913, to the 5th of June, 1913, a period of about 5 months.

[1, 2] In order to acquire by the statute of limitation the "full title" (R. S. art. 5679) to another's land, all the requirements of the statute must be strictly complied with. (1) "There must be peaceable, adverse possession thereof, cultivating, using or enjoying

same," and (2) "paying taxes thereon," and (3) "claiming under a deed or deeds duly registered." The statute itself makes no distinction in the several requirements; there are no degrees of excuse permitted in the failure of performance of the one or the other. They are all of the same dignity, and if there is any excuse allowed for the nonperformance of any one of them it grows out of the relief granted by the courts in the exercise of some equitable power to excuse, based upon a real and very sound principle, appealing to the court. In this case there was a period only of about four years five months and eleven days of actual possession under registered deeds, under claim of limitation title, a break of about five months lacking to complete the statutory requirement of registration. The excuse offered is:

"When the sale was finally consummated, about January 1, 1913, August Free delivered to Jester a batch of old recorded title papers, and among them was the unrecorded deed. It was understood that August Free was to record certain papers, and Jester supposed that such papers as should be recorded, including the deed, would be filed for record by Free. In the early part of June, 1913, however, in going over the papers which Free had delivered to him, Jester discovered the deed and, perceiving that it had not been recorded, he immediately filed same for record."

In Gillum v. Fuqua, 61 S. W. 939, this court said:

"All of the incidents mentioned in the statute must concur and be continued for the time prescribed, in order to complete the bar of the statute."

In William Cameron Co. v. Collier, 153 S. W. 1178, it was held a period of nine months' delay in registering constituted an unreasonable break, and the court said:

"It is well settled that all of the requirements of the statute must be concurrent; and, unless the deed under which the occupant claims is of record during all of the time of his occupancy necessary to complete the five-year period, the requisites of the statute are not met. The evidence being undisputed upon this issue, the court did not err in not submitting it to the jury. The question of Daniels having a reasonable time after procuring his deed to file it for record cannot arise, when the time in which he allowed it to remain unrecorded is as long as is shown by this record. The following cases sustain the action of the court in refusing to submit the issue of limitation: Medlin v. Wilkins, 60 Tex. 418; Porter v. Chronister, 58 Tex. 56; Cook v. Dennis, 61 Tex. 248; Heflin v. Burns, 70 Tex. 353, 8 S. W. 48; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Van Sickle v. Catlett, 75 Tex. 409, 13 S. W. 31; Sorley v. Matlock, 79 Tex. 307, 15 S. W. 261; Gillum v. Fuqua, 61 S. W. 938." Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; Nueces Valley Irr. Co. v. Dunn, 108 Tex. 337, 193 S. W. 663;

Griswold v. Comer (Com. App.) 209 S. W. 139; Roseborough v. Cook, 108 Tex. 364, 194 S. W. 131; Baker v. Fogle (Sup.) 217 S. W. 141.

This court held, in Sweeten v. Taylor, 184 S. W. 695:

"We think that a failure to record a deed for three months, under the facts as disclosed by this case, there being no excuse shown for the delay, was unreasonable, and that the trial court did not err in so holding."

We cannot see, in the reasons given here as an excuse for not recording that deed, anything but the most palpable neglect. The fact that the unrecorded deed was placed in a bundle of other registered title papers and placed in the hands of farmers unaccustomed to such transactions, and it was understood that August Free was to record the papers and that Jester supposed the deed would be filed for record by Free, was no excuse whatever. The statute is positive, and to avoid its requirements there must be a strong and very potent reason to justify its avoidance, and we find none here. The facts set out in the court's findings are sufficient to evidence that the reasons given for the delay in the registration are not sufficient to bring it within the rule of excusable negligence.

[3-5] It is the contention of appellant, under proper assignments and propositions, that, because Henderson and Tompkins sold the land in controversy to Jester and retained the express vendor's lien on the land to secure the deferred promissory purchase money notes, a continuous holding was had by Jester, under deeds duly registered, under the registry of his vendor's title, and therefore a sufficient holding thereby, under a deed duly registered, during such five-month period, which prevented any break either of possession or registration. Under all the authorities in this state, where land is sold on a credit, and the express vendor's lien is retained in the deed on the land to secure the payment of the notes, the legal title has not passed out of the vendor, and the vendor may elect to stand on his legal title and sue direct for the land. White v. Cole, 87 Tex. 500, 29 S. W. 759; Reyes v. Implement Co., 188 S. W. 450; Lippincott v. Taylor, 135 S. W. 1070. But there is nothing in that line of authorities to excuse a vendee holding under a deed showing that purchase money has not been paid from registering his deeds, if he uses them in defense of a limitation title. A vendee has the equitable title only to the land, but when the notes and liens are discharged he receives the full title, not until then. There is no such relation of agency and tenancy between the vendor and the vendee as to excuse him from doing all the required things precedent to such a defense under the five-year statute of limitations. The holding

is not for the vendor, but subject to the payment of the notes and to discharge liens so as to ultimately secure the title freed from the lien. Otherwise, as to the vendor and with that exception, the holding, necessarily, must be as adverse to him as to the world. It is a question of title and possession claimed under deeds duly registered, and such holding against the world will not excuse the failure to register title. If not so, there would be no necessity ever to record deeds holding liens until the debt be discharged. We agree with the views expressed in the authorities cited that appellant's possession is adverse to all the world, but not for five years with deeds duly registered. Possession alone is not what gives the title. It makes no difference from what source the deed comes, whether from a deed to a predecessor in title with whom he holds in privity or from a deed from any other source.

[6] There is no question but that the vendee's possession may be tacked on to the possession of those under whom he holds in privity to toll limitation title, if all the other elements are present. We only mention, cite, or discuss a few of the many cases cited on the question of legal title and naked possession, as the law is so well settled on the subject; but none of those cases cited pretend to relieve any one from an unreasonable delay, such as five months, in registering the deed, and it is our opinion that such instruments must be as promptly filed for record as is possible and the delay must be a reasonable one and free from any gross negligence in order to comply with and secure the benefits of the statute. When the statute is made elastic and the time by judicial construction is enlarged, to excuse the strictly statutory requirement, it must be such excuse as to appeal to the reasonable equitable powers of the court, and the party himself free from culpable negligence. The appellant argues:

"Therefore, it was not necessary that the deed from Henderson and Tompkins to Jester and Morrow, under which they claimed, should have been recorded during the five-month period before it was recorded, but all that was required is that Jester and Morrow should hold under a duly recorded deed, which they did— that from appellant to Henderson and Tompkins—and that the title conveyed by such deed to Henderson and Tompkins be in fact held by them for and in trust for Jester and Morrow, the equitable claimants and possessors."

[7] This is a very fair illustration of appellant's contention. If this position be correct, what is the time limit? We have shown above the deed could not be kept from record an unreasonable time, say as much as three months in one case and nine in another. By process of reasoning, should the court abandon the strict construction of the statute and its requirements? If so, claims

may be presented apparently so reasonable as to demand an extension of the time from months to years. We do not think it the purpose of the statute to take excuses for nonperformance of its commandments, nor purpose of the courts to grant relief generally for delays in registration any more than breaks in possession or payment of taxes. The vendee is entitled to the possession, not the vendor, by reason of his purchase, and under the deed he holds exclusively for himself, not as an agent or tenant for any one, but as the true owner against the world. The vendor whose vendee has not made default cannot maintain an action for the recovery of the land, because he is not entitled to the possession. State v. Dayton Lumber Co., 106 Tex. 41, 155 S. W. 1178; Windsor v. Freeman, 204 S. W. 780; Brooker v. Wright, 216 S. W. 196.

[8] Such deeds between vendors and vendees are regarded as executed contracts and not executory, except so far as necessary to collect the purchase money. Carey v. Starr, 93 Tex. 508, 56 S. W. 324; Ogburn v. Whitlow, 80 Tex. 241, 15 S. W. 807; Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326; Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582. We do not think it of any importance when the purchase money was paid. The principle is the same as between the vendor and vendee as long as that relation lasts, and no default is shown whereby the right of the vendor may be exercised to repossess himself of the property. The vendee, as shown from this record, was holding possession for himself under his deed and purchase. So far as the right of the vendor is concerned, if he had secured a reconveyance of the land, he could not, himself, have tolled limitations any more than could his vendee. Cocke v. T. & N. O. Ry. Co., 46 Tex. Civ. App. 363, 103 S. W. 407. In this case Cocke would have completed his ten-year claim had he not conveyed out of himself during the period of his ten years holding the title, which after a period of about two years during such holding was reconveyed to him. The court held this to be fatal and broke his continuity of possession, though he held in both capacities as vendor or as vendee for more than ten years.

Appellant contends, under the sixth assignment, that limitation runs against the life tenant or the remainderman where the holding is adverse to them and the adverse holding is known to the remainderman. The same question is involved in all the subsequent assignments to and including the eighteenth, though in different statements and language. The discussion hereunder is intended, without further reference thereto, to answer all such assignments.

[9] It is best now to set out the language of the deed as shown by the findings of facts, as follows:

"On November 30, 1876, David Eppright and wife, Mary Ann, in whom was vested the title, executed and delivered to their daughter, Martha Ann Riggle, a deed to a part of the Wayman Wells survey, in Travis county. By the terms of the deed the land was 'given, granted, conveyed, and delivered unto the said Martha Ann Riggle for and during her natural life.' The deed further provided that 'At the death of the said Martha Ann Riggle, the remainder of the estate in said land is here conveyed to and the same is to become the absolute property of the children of the said Martha Ann Riggle or their descendants in the same proportion as is prescribed by the laws of descent and distribution now in force in Texas, to have and to hold said land unto the said Martha Ann Riggle during her lifetime and at her death unto her children then living and to the descendants of such as may then be dead in fee simple forever. And we, the said David and Mary Ann Eppright, do hereby bind ourselves to warrant and defend the title to said land against the claims of all persons whomsoever. This land is conveyed to the said Martha Ann Riggle for her life with remainder to her children surviving her and to the descendants of such of them as she may survive as an advancement to them out of our community estate and which we estimate as being now worth $4,000."

We will not discuss the facts in respect to the limitation boundary line and estoppel further than to say they support the court's finding. We will discuss the question of law arising and growing out of the peculiar language of the deed. The language of the deed clearly created in her only a life estate. It then in very plain language gave the remainder of the estate as "the absolute property of the children of the said Martha Ann Riggle or their descendants in the same proportion as is prescribed by the laws of descent and distribution now in force in Texas."

In many cases where the words "bodily heirs," or, such words as technically come under the rule in Shelley's Case, have been made to apply as describing who shall take the remainder after the life estate terminated, the court has determined from other language in the instruments that the grantor or testator intended, even by the use of these technical words, to refer to "children," and the rule in Shelley's Case did not apply. The rule is briefly stated in Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15, as follows:

"The question argued is whether the plaintiff took a fee simple title, or only an estate for life. It is the contention of the plaintiff below, sustained by the Court of Civil Appeals, that the deed vested in him the fee by force of the rule in Shelley's Case, which is briefly thus stated: 'If an estate for life, or any other particular estate of freehold, be given to one, with remainder to his heirs, the first taker shall be held to have the fee, and the heirs will take by descent, and not by purchase.' Counsel for defendant (plaintiff in error) contend that the rule has no application, for the reason that, if

we try to apply it to the granting clause, the habendum clause, and the warranty, without regard to the words 'upon the terms and conditions hereinafter stated,' we find, not a life estate, but a fee-simple estate granted to the first taker; while, if we regard the words just quoted and the last provision in the deed to which those words evidently refer, we find a life estate granted to the first taker and a remainder, not to heirs, but to children. The several parts of the deed are not to be considered without reference to each other, but are to be construed together and the effect of one upon the other so determined."

So if the language of the whole will is ambiguous and intention is doubtful and cannot be gathered from all its language, courts have considered other facts and circumstances surrounding the execution of the instrument or facts showing the relation of parties. The use of the word "children," describing remaindermen, shows the intention of grantor to use words of purchase and not of limitation, and to create a life estate with a remainder. This deed, by its own language, "for and during her natural life," expressly created in Mrs. Riggle a life estate, and the words "at her death" terminated such estate and indicated the beginning of the "remainder," and all too plainly shows the intention of the testator to create a life estate to Mrs. Riggle, and then to become the absolute property of her children who survive her or the "descendants" of the children whom she may survive. The use of the words "to take according to the laws of descent and distribution" is simply to provide a method of distribution, and the word "descendants" will be construed as a word of purchase, and not of limitation. Hancock v. Butler, 21 Tex. 804; Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15; Hunting v. Jones (Com. App.) 215 S. W. 959; Bass v. Surls, 153 S. W. 915; Vaughn v. Pearce, 153 S. W. 171; Berry v. Spivey, 44 Tex. Civ. App. 18, 97 S. W. 511; Sprinkle v. Leslie, 36 Tex. Civ. App. 356, 81 S. W. 1018; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824; McMahan v. McMahan, 198 S. W. 354; Kesterson v. Bailey, 35 Tex. Civ. App. 235, 80 S. W. 97; Devlin on Deeds (3d Ed.) § 846e; 18 Corpus Juris, p. 326.

[10] We think it is a fair inference from the facts in the record, and it is to be assumed in favor of the trial court's conclusion and judgment, that Mrs. Manning, the remainderman and the only child of Martha Ann Riggle, the owner of the life estate, was alive when the deed was delivered. The court found that Mrs. Manning was born some time in the year 1876, the date not being shown. The deed was delivered November 30, 1876. The law favors vested rather than contingent remainders, and it certainly is to be assumed, or will be presumed, that Mrs. Manning was born some time dur-ing the first 11 months of 1876 rather than during the last month.

[11] On the issue of boundary by estoppel raised by appellant there was no express finding requested by him, so it will be presumed the court based its judgment upon sufficient facts before him, and necessarily found against appellant on the contention that appellee was estopped to claim the fence was not on the line between appellee's land and of the defendant Mrs. Emma Johnson.

[12-14] As stated, there is no direct finding. Neither is there any bill of exception in the record complaining that the court failed or refused to make such finding. There are some indefinite findings shown in the court's findings, but at the same time the court states the survey made shortly before suit was filed was the "first evidence that had been brought home to her of the fact that the fence was not on the true line." While the life estate might have become barred, it could not have barred the remainderman during the existence of the life tenant. Mrs. Manning's right, therefore, was not affected during that period. She was not called on to take any action. She was not entitled to the possession. ' She was under a disability to sue. She could not acquiesce in a thing she did not know, for it does not appear that the means of ascertaining the correctness of the location of the line were not equally open to Mrs. Manning and to the defendants. Decker v. Rucker, 202 S. W. 1004; Clevenger v. Blount, 103 Tex. 27, 122 S. W. 529. Of itself, long acquiescence alone would not constitute estoppel. Schunior v. Russel, 83 Tex. 83; Wiley v. Lindley, 56 S. W. 1001; Camp v. League, 92 S. W. 1062.

[15, 16] Some elements of estoppel are lacking, and obviously the findings of the court on the subject were not intended to set out all the testimony heard and considered in reaching his judgment. In the absence of exceptions thereto or request for further findings on the subject, the findings will not be questioned or the judgment disturbed for that reason, if it were necessary in this case to do so, which it is not. No complaint is made of the trial court's finding as to the true location, and the finding will not be disturbed. We assume that the court in its findings set out all the evidence on the subject before it material on the issue, and there was ample to justify it in the ruling. No statement of facts was filed. Oldham v. Medearis, 90 Tex. 506, 39 S. W. 919; Producers' Oil Co. v. Snyder, 190 S. W. 514. Or that the court omitted to mention a fact essential to the correctness of the judgment. The true rule in such cases is given in Kimball v. Houston Oil Co., 100 Tex. 340.

[17] Appellant's nineteenth assignment complains that the court erred in rendering

judgment against W. J. D. Daugherty in favor of Mrs. Emma Johnson in the sum of $5,939 and interest, etc., upon his warranty and in rendering judgment at the same time and in same decree against W. J. Daugherty and in favor of T. S. Henderson and E. D. Tompkins upon the same warranty for another sum of $5,939, interest, etc., without providing in the judgment that the payment of one of such sums should be in full satisfaction of both of said judgments. After adjournment the trial court admitted error in the judgment as set out in the findings filed herein too late to correct it. We will here so correct the judgment that there shall be but one recovery.

Appellant further complains in the twentieth assignment that the court erred in rendering judgment against W. J. Daugherty and warrantors in favor of Mrs. Emma Johnson for more than the sum of $172.75. The deed introduced in evidence shows she paid $1,000 for 410 acres, or the sum of $2.44 per acre therefor, and the court awarded judgment for title and possession of only 70.8 acres of land in controversy, which, at $2.44 per acre for the 70.8 acres, would amount to only $172.75, for which there should have been recovery. The court explains the mistake to have grown out of statement made by counsel of Mrs. Johnson that the land cost $84 per acre, apparently accepted by the parties in lieu of other proof. We will also correct the judgment in that particular.

[18] As these matters were not called to the attention of the court by motion to correct or otherwise, and the findings and conclusions of the court show the error to be one the court would have corrected if timely requested, and there is no objection made by any one before the court, the judgment will be reformed in the above particulars, but at appellant's cost.

We have carefully considered each and every assignment presented, and, finding no reversible error assigned, they are overruled. The judgment is here reformed so that there shall be but one recovery for said sum of $5,939 and interest against appellant, the payment of one of which shall operate as a full discharge and satisfaction of both judgments. And it is further reformed so that the judgment in favor of Rebecca M. Manning against Mrs. Emma Johnson and her warrantors for the sum of $275, together with interest, shall be reformed so as to be reduced to $172.75, together with interest

and costs in lieu thereof. Appellant is adjudged to pay all the costs.

The judgment as reformed is affirmed.

### On Motion for Rehearing.

We have carefully considered the motion for rehearing and replies filed by the several parties.

[19] The contention of appellant is that the judgment against appellant and the warrantor should not have been in favor of Mrs. Emma Johnson for more than $172.75. The contention, as shown, of appellant was that she paid $1,000 for 410 acres, or the sum of $2.44 per acre therefor, and the court awarded judgment for title and possession of only 70.8 acres of land in controversy, which, at $2.44 per acre for the 70.8 acres, would amount to only $172.75, for which there should have been recovery. However, no one has appealed in this case except W. J. Daugherty, and no other questions the right of Mrs. Johnson to recover upon the warranty the sum of $5,939, nor have T. S. Henderson, E. D. Tompkins, L. M. Morrow, and Joe G. Jester appealed from the judgment in favor of Mrs. Johnson. The court, in passing upon the question of the amount of recovery, had before it all the testimony, agreement of attorneys, and statements made in his presence, so, in fixing the amount of the judgment and recovery, it is presumed, as there is no statement of facts, that the court had before it the evidence sufficient to support the judgment, and, as stated in the opinion, the only correction we make in that judgment is that there shall be but one recovery, as found by the court, in the sum of $5,939 and interest against appellant in favor of T. S. Henderson and E. D. Tompkins upon the one recovery upon the same warranty, the payment of which one judgment shall satisfy both judgments.

As there was no appeal from the judgment of $275 in favor of Rebecca M. Manning against Mrs. Emma Johnson, our judgment is therefore reformed, so as to eliminate that part of the judgment reducing the amount recovered by Mrs. Manning, and inserting in lieu thereof a provision to the effect that as said judgment has not been appealed from it will not be disturbed, but left standing as rendered by the trial court.

The motion of appellant for rehearing is overruled. The motion of Mrs. Manning for reformation and correction of judgment is granted.